Eugene B. GOODMAN,
Plaintiff-Appellee,

v.

HEUBLEIN, INC. and Heublein International Division of Heublein, Inc.,
Defendants-Appellants.

No. 567, Docket 80–7685.

United States Court of Appeals,
Second Circuit.

Argued Dec. 31, 1980.

Decided March 25, 1981.

Rehearing and Rehearing In Banc
Denied May 27, 1981.

Abner W. Sibal, Washington, D.C. (Edward J. Dempsey, and Farmer, Wells, McGuinn, Flood & Sibal, Washington, D.C., Jay S. Siegel, Diana Garfield, and Siegel, O'Connor & Kainen, Hartford, Conn., on brief), for defendants-appellants.

Eugene B. Goodman, pro se.

Karen MacRae Smith, Washington, D.C. (Leroy D. Clark, Gen. Counsel, Constance L. Dupre, Acting Associate Gen. Counsel, and Vincent Blackwood, Asst. Gen. Counsel, Washington, D.C., on brief), for the Equal Employment Opportunity Commission as amicus curiae.

Before TIMBERS and NEWMAN, Circuit Judges, and EGINTON,* District Judge.

NEWMAN, Circuit Judge:

Eugene Goodman brought this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* (1976), alleging that his employer, appellant Heu-

---

* The Honorable Warren W. Eginton of the United States District Court for the District of Connecticut, *sitting by designation.*

blein, Inc. and Heublein International Division of Heublein, Inc. (hereafter collectively "Heublein"), failed to promote him to vice-president because of his age, and precipitated his discharge by ordering him transferred out of the country in retaliation for his pressing his age discrimination claim. After a jury trial in the District Court for the District of Connecticut (T. Emmet Clarie, Chief Judge), the jury awarded Goodman $226,200 in compensatory damages plus $226,200 in liquidated damages. Heublein appeals the judgment entered pursuant to this verdict, raising numerous contentions. We affirm.

The evidence presented fair jury questions both as to age discrimination on two occasions in denying promotion to different offices at the level of vice-president and as to a retaliatory discharge. Since the sufficiency of the evidence is not challenged on appeal, it need not be detailed.

 Heublein challenges the award of liquidated damages on the ground that such damages may not be awarded unless the court determines that the employer was not acting in good faith. This contention is based on the interrelationship between the ADEA and two other federal statutes. Section 7(b) of the ADEA, 29 U.S.C. § 626(b) (1976), incorporates the "powers, remedies, and procedures" of the Fair Labor Standards Act (FLSA), as set forth in FLSA §§ 11(b), 16(b)–(e), and 17, 29 U.S.C.

§§ 211(b), 216(b)–(e), and 217 (1976). As enacted, § 16(b) of the FLSA had mandated awards of liquidated damages, equal in amount to wages due, but Congress ameliorated this requirement in 1947 by providing, in § 11 of the Portal-to-Portal Act (PPA), 29 U.S.C. § 260 (1976), that in an FLSA action the court has discretion to disallow all or part of the liquidated damages if it finds that the employer acted in "good faith." Heublein contends that § 7(b) of the ADEA, by incorporating FLSA procedures, also incorporates this procedural aspect of the PPA. We disagree.

In *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), the Supreme Court pointedly observed that the ADEA selectively adopts only some of the procedural changes that the PPA made applicable to the FLSA. *Id.* at 581–82 n.8. As the Court noted, the ADEA, in § 7(e), 29 U.S.C. § 626(e) (1976), specifically incorporates §§ 6 and 10 of the PPA, 29 U.S.C. §§ 255 and 259 (1976) (concerning statute of limitations and reliance on agency rulings), but not § 11, 29 U.S.C. § 260 (1976), the liquidated damages provision. Moreover, in enacting the ADEA, Congress departed from the FLSA procedure by adopting "willfulness" as an element of liability for liquidated damages,[1] and by committing the issue of the employer's state of mind to the trier of fact.[2] We reject Heublein's contention,

---

1. "Willfulness" is also pertinent to ADEA suits in another respect. Section 6 of the PPA, 29 U.S.C. § 255, extends the two-year statute of limitations for FLSA suits to three years for "willful" violations; § 7(e) of the ADEA, 29 U.S.C. § 626(e), specifically incorporates § 6 of the PPA. The Fifth Circuit has held, in an FLSA suit, that an employer can act willfully for purposes of the three-year statute of limitations and still be in good faith for purposes of mitigating liquidated damages. *Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139 (5th Cir. 1971), *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). This suggests that willfulness in the ADEA is a lesser degree of culpability than bad faith in the FLSA. The Ninth Circuit goes even farther by stating that in ADEA suits willfulness for purposes of liability for liquidated damages is a lesser degree of culpability than willfulness for purposes of the three-year statute of limitations. *Kelly v.*

*American Standard, Inc.,* 640 F.2d 974 (9th Cir. 1981).

2. Prior to *Lorillard* uncertainty existed as to whether the trier of fact in an ADEA case would be the jury (unless waived). *Compare Pons v. Lorillard,* 549 F.2d 950 (4th Cir. 1977), *aff'd,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) (right to jury trial); *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3d Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978) (same), *with Morelock v. NCR Corp.,* 546 F.2d 682 (6th Cir. 1976), *vacated and remanded,* 435 U.S. 911, 98 S.Ct. 1463, 55 L.Ed.2d 503 (1978) (no right to jury trial). While *Lorillard* was being litigated, the Senate added an amendment to the bill, H.R. 5383, 95th Cong., 1st Sess. (1977), that Congress was considering to amend the ADEA. The Senate amendment was added to "clarify" that damage claims under the ADEA could be

agreeing with the three Circuits that have considered the same claim after the Supreme Court's opinion in *Lorillard*. *Kelly v. American Standard, Inc.*, 640 F.2d 974 (9th Cir. 1981); *Wehr v. Burroughs Corp.*, 619 F.2d 276 (3d Cir. 1980); *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979). *But see Hays v. Republic Steel Corp.*, 531 F.2d 1307 (5th Cir. 1976) (pre-*Lorillard*); *Bertrand v. Orkin Exterminating Co.*, 454 F.Supp. 78 (N.D.Ill.1978) (post-*Lorillard*); *Johnson v. Hidalgo*, 23 E.P.D. ¶ 31,125 (D.D.C. July 25, 1980) (semble).

■ Heublein contends that the instructions to the jury were erroneous in several respects. First, the claim is made that the charge placed the burden of proof upon Heublein when the jury was told that Heublein had to "produce evidence which shows or demonstrates some legitimate and non-discriminatory reason for its employment decisions concerning the plaintiff, and that age was not a determinative factor." Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff in a discrimination case must present a *prima facie* case that adverse action was taken on the basis of an impermissible factor, in this instance, age. If he does, the defendant then has the burden of producing evidence of a non-discriminatory reason for the challenged action. If the defendant produces such evidence, the plaintiff is then entitled to show that the defendant's reason is a pretext for discrimination. *See Texas Department of Commu-nity Affairs v. Burdine*, —— U.S. ——, 101 S.Ct. 1089, 67 L.Ed.2d —— (1981). Despite the shifting in the burden of going forward with evidence, which *McDonnell* contemplates, the burden of persuasion remains on the plaintiff on the ultimate issue of discrimination. The defendant does not have to prove "absence of discriminatory motive." *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978).

■ The *McDonnell* procedure was developed in the context of Title VII court trials, and, as the First Circuit has observed, it may not necessarily be helpful to bring it to the attention of the jury. *Loeb v. Textron, Inc., supra*, 600 F.2d at 1016. One risk of doing so is that the jury may be confused by the distinction between the burden to produce evidence, which shifts to the defendant after the plaintiff presents a *prima facie* case, and the burden of persuasion, which remains on the plaintiff. That risk was adequately guarded against here. The passage objected to placed on Heublein only a burden to "produce evidence," and other passages emphasized the plaintiff's burden of proof.[3] The jury charge, read as a whole, fairly conveyed the correct standard.

Second, Heublein challenges the instruction that permitted the jury to consider, as part of recoverable incidental damages, the interest that would have been earned on savings Goodman alleged he was obliged to spend because of his discharge. This instruction related to damages the jury was

---

tried to a jury. 123 Cong.Rec. S17,196 (daily ed. Oct. 19, 1977) (remarks of Sen. Kennedy). By the time the Conference Committee considered the bill, *Lorillard* had been decided, but, as the Conference Report noted, the Supreme Court ruled on a right to jury trial only as to compensatory damages and did not rule as to liquidated damages. H.Conf.Rep.No.950, 95th Cong., 2d Sess. 13–14, *reprinted in* [1978] U.S. Code Cong. & Ad.News 528, 535. The plaintiff in *Lorillard* had agreed that the liquidated damages claim would be decided by the court. 434 U.S. at 577 n.2, 98 S.Ct. at 868. In accepting the Senate amendment, which clarified the right to jury trial "of any issue of fact" in an ADEA suit "for recovery of amounts owing as a result of a violation," ADEA § 7(c)(2), 29 U.S.C. § 626(c)(2) (Supp. II 1978), the Conferees correctly noted that the reasoning in *Loril-lard* would make a jury trial available for liquidated damages: "Because liquidated damages are in the nature of legal relief, it is manifest that a party is entitled to have the factual issues underlying such a claim decided by a jury." H.Conf.Rep.No.950, *supra* at 14, [1978] U.S.Code Cong. & Ad.News 535.

**3.** For example, the jury was told that the "burden of convincing you as to what happened is always on the plaintiff," the "defendants' burden is limited to going forward and stating reasons for the action that it did or did not take," and the "plaintiff has the burden of convincing you with his evidence that he did not get these two promotions to vice-presidency ... because of his age."

entitled to award only if it did *not* find Heublein's discrimination to have been willful. Since the jury awarded liquidated damages, which it was instructed were allowable only upon a finding of willfulness, it is clear that no damages for lost interest were included in the verdict.

Heublein raises three additional challenges to the charge, none of which was presented to the District Court: failure to instruct that Goodman was required to prove, in establishing his *prima facie* case, that he applied for the position of vice-president,[4] failure to include "intentional" in the definition of willfulness,[5] and failure to require the jury to consider separately the willfulness of each act of discrimination. We decline to consider these contentions, raised for the first time on appeal, Fed.R. Civ.P. 51; *Levitt v. Desert Palace, Inc.*, 601 F.2d 684, 686 (2d Cir. 1979). We note that whether a formal application needs to be made for a high-level executive position is a factual question dependent on the particular institutional structure and practices of the employer. In this case the evidence permitted the jury to infer that Heublein was alerted to Goodman's interest in being considered for promotion to vice-president, without a formal application. We also note that the charge on willfulness, though omitting the adjective "intentional," did require the jury to find that Heublein either "knew" or showed "reckless disregard" as to whether its conduct was prohibited by the ADEA. *Cf. Wehr v. Burroughs Corp.*, supra.[6]

Heublein next questions the adequacy of Goodman's compliance with the administrative procedures required by the ADEA, because Goodman did not file a claim with the Connecticut Commission on Human Rights and Opportunities (CHRO) concerning his retaliation charge, after he filed his initial claim concerning denial of promotion. Although § 14(b) of the ADEA, 29 U.S.C. § 633(b) (1976), requires a claimant to file a complaint with the appropriate state agency before proceeding in a federal court, *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2061, 60 L.Ed.2d 609 (1979), the section is to be construed to accord with the similar requirements of § 706(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(c) (1976), 441 U.S. at 756, 99 S.Ct. at 2071. Under Title VII, we have held that a claimant need not file additional claims with the federal administrative agency when those claims, arising subsequent to the initial filing, are reasonably related to the allegations of an initial claim that was properly filed. *Kirkland v. Buffalo Board of Education*, 622 F.2d 1066 (2d Cir. 1980). Similarly here, we conclude that Goodman, having brought his age discrimination claim to the state agency, did not have to file a second claim with that agency in order to assert his retaliation claim in federal court.

Finally, Heublein contends that the District Court erred in permitting Goodman to assert claims arising more than 180 days prior to the filing of the notice of intent to

---

4. Trial counsel objected to the charge for its inclusion of the *McDonnell* procedure, including the element of a *prima facie* case, but did not contend that the content of the *McDonnell* discussion was deficient.

5. Trial counsel objected to the charge of willfulness only because the explanation of willfulness at one point included but at another point omitted from the definition of willfulness that Heublein acted in reckless disregard of whether its conduct violated the ADEA. Trial counsel suggested this left the definition "ambiguous," but did not ask that the definition include "intentional," the point now urged on appeal.

6. In finding, under proper instructions, that Heublein had denied Goodman a promotion *because of* age, the jury necessarily concluded

that Heublein's action was intentional. In a discriminatory treatment case, such as this, an employer's action, if taken *because of* an impermissible factor such as age, cannot be the result of negligence, mistake, or other innocent reason. On the other hand, in a discriminatory impact case, where an employer acts on the basis of some standard that is shown, in practice, to have a disproportionate impact on some group identifiable by a characteristic such as age, a finding of liability will not inevitably mean that the employer discriminated intentionally. *Cf. Geller v. Markham*, 635 F.2d 1027 (2d Cir. 1980) (hiring criterion of less than five years' experience found to result in unjustified discrimination on the basis of age).

sue, which is required to be filed with the Secretary of Labor 60 days prior to filing an ADEA lawsuit. ADEA § 7(d), 29 U.S.C. § 626(d) (1976). Section 7(d)(1) bars claims filed more than 180 days prior to such notice, but § 7(d)(2) extends this period to 300 days in any case to which § 14(b), 29 U.S.C. § 633(b), applies. This latter provision, applicable in so-called "deferral states," *i. e.,* those, like Connecticut, having an age discrimination law, requires an ADEA plaintiff to wait 60 days after proceedings under the state law have been "commenced" before filing his lawsuit in federal court. Goodman commenced a proceeding before the Connecticut CHRO, but his complaint was untimely under state law. Heublein contends that a late state filing renders § 14(b) inapplicable and is therefore ineffective to give an ADEA plaintiff the benefit of the 300-day period established by § 7(d)(2). However, the Supreme Court, construing § 14(b), has held that an ADEA plaintiff's state filing need not be timely under state law in order to permit him to proceed in federal court. *Oscar Mayer & Co. v. Evans, supra,* 441 U.S. at 759, 99 S.Ct. at 2073. He need only commence the state action, even though that action is subject to dismissal because of the late filing. In *Bean v. Crocker National Bank,* 600 F.2d 754 (9th Cir. 1979), the Ninth Circuit, applying *Oscar Mayer,* held that the 300-day period, and not the 180-day period, applies to an ADEA plaintiff in a deferral state who has filed an untimely claim with the state agency.

 Heublein urges that the Ninth Circuit's reasoning has been impaired by *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), in which the Supreme Court held that a Title VII complaint, sent to the Equal Employment Opportunities Commission (EEOC) prior to any state filing, was not "filed" under § 706(c) of Title VII because that provision prohibited a Title VII plaintiff in a deferral state from filing with the EEOC until 60 days after a state proceeding had been commenced. *Mohasco* viewed the Title VII complaint as "filed" with the EEOC after the expiration of 60 days from the date the EEOC sent the complaint to the state agency; unfortunately for the plaintiff, this 60-day period expired more than 300 days after the alleged violation, and the complaint was therefore untimely under § 706(e), 42 U.S.C. § 2000e–5(e) (1976). *Mohasco* concerns only the prerequisites for proper filings with the pertinent federal agency. It creates no timeliness requirement for filing with a state agency; in fact, the Court specifically noted that Congress had not imposed time limitations on state filings. 447 U.S. at 816 n.19, 100 S.Ct. at 2491. Subsequently, the Court vacated for reconsideration in light of *Mohasco* the judgments of two courts of appeals that had rejected the Ninth Circuit's reasoning in *Bean* and had denied an ADEA claimant the benefit of the 300-day claim period because he had not commenced state proceedings within 180 days after the discriminatory act. *Ewald v. Great Atlantic & Pacific Tea Co.,* 620 F.2d 1183 (6th Cir.), *vacated,* —— U.S. ——, 101 S.Ct. 311, 66 L.Ed.2d 143 (1980); *Ciccone v. Textron, Inc.,* 616 F.2d 1216 (1st Cir.), *vacated,* —— U.S. ——, 101 S.Ct. 311, 66 L.Ed.2d 143 (1980). We remain bound by the construction of the ADEA provisions in *Oscar Mayer,* and we agree with the Ninth Circuit that even an untimely filed state proceeding is "commenced" within the meaning of § 14(b) so as to make available the 300-day period of § 7(d)(2).

The judgment is affirmed.[7]

---

7. While this appeal was pending, Goodman filed a motion with this Court, asking that the judgment be modified to provide for interest on the jury's award from the date of the verdict until the date of the judgment. Without intimating any views on the merits of this claim, we deny the motion without prejudice to re-newal before the District Court, which has not yet been afforded an opportunity to consider either the merits of the claim or whether the additional relief has been sought too late. *See generally,* Comment, *Interest on Judgments in the Federal Courts,* 64 Yale L.J. 1019 (1955).