John COLUCCI, Plaintiff,

v.

The NEW YORK TIMES COMPANY, Defendant.

No. 80 Civ. 0049.

United States District Court, S. D. New York.

Feb. 19, 1982.

John R. Harold, Bronxville, N. Y., for plaintiff.

Cahill, Gordon & Reindel, New York City, for defendant; Joel C. Balsam, Jerome Sheinman, Abigail I. Petersen, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, in the employ of the defendant, The New York Times Company (the "Times") since 1964 when he started as a messenger, commenced this action against it upon two separate claims: one, which he terms "reverse" sex discrimination, and two, retaliation following his filing of discrimination charges with the Equal Employment Opportunity Commission ("EEOC").[1]

By August 1978 plaintiff had been advanced through various groups to the position of statistical clerk, group 4, in the Media Services Department (Media Services Statistical Clerk). A vacancy was created for the advanced position of Media Services Project Assistant, group 7, upon the retirement on August 1, 1978 of Victor Monastero, plaintiff's immediate supervisor. The opening was posted by the defendant as a job title vacancy on September 21, 1978. Plaintiff did not apply for the position. At that time and for some time after it had been filled, he was a participant in a strike by his union, the Newspaper Guild against the Times. The Times appointed a female, Heather Borjes, to the position on October 31, 1978 with an effective date of November 20, 1978.

The basic work of a statistical clerk, group 4, is to compile and post to regular and special reports, as assigned, figures reflecting cumulative and comparative media statistics. Included among other duties is measuring with an agate rule advertising

---

1. Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (1981).

lineage in the Times and in other advertising Media and posting the totals to specified reports.

The basic work of a Media Services Project Assistant, group 7, is to coordinate the obtaining and compiling of statistical data for presentations by advertising space salesmen and other New York Times projects; compiling figures for reports on advertising lineage, readership, circulation comparison, rates, etc. for the Times and other media; to work with suppliers of standard market data from government and private sources, such as census information and releases from trade associations. This position calls for initiative and independent judgment. Those in group 4 work under the direction of the group 7 Media Services Project Assistant. Plaintiff himself described his job as strictly to measure the lineage with an agate rule, post the figures and some statistical typing. He described the group 7 job as a thinking job where one had to know what sources to use, involving judgment and choice among sources.

### I. The Charge of Discrimination[2]

■ The allocation of burdens and order of presentation of proof here applied is that set forth in McDonnell Douglas Corp. v. Green[3] and recently affirmed in Texas Department of Community Affairs v. Burdine.[4] Essential elements of plaintiff's prima facie case are proof that he applied for and was qualified for the position in question.[5] At the outset, plaintiff's discrimination charge fails since after the posting of the notice he never applied for the position. The defendant, since the Newspaper Guild members were then on strike, not only

simultaneously notified the union of the posting of the job vacancy but sent a copy of the notice to the union office. The plaintiff does not deny he was aware of the vacancy or that he did not apply. Rather, he seeks to excuse his failure to do so upon a claim that when he learned in June or July, 1978 that Monastero planned to retire, he made known to his supervisor that he wished to be considered for the position and that he was assured he would be considered. However, this informal oral request, made some two or three months in advance of the time the position was open, was no substitute for applying when in fact the position became available and notice thereof was posted.[6] But even if it may be accepted that plaintiff properly and timely applied, upon consideration of all the evidence and the demeanor of the witnesses, the Court finds that plaintiff has failed to show that he was qualified for the position; that he has failed to establish a prima facie case of discriminatory treatment by reason of his non-promotion to the position. Moreover, even were it assumed contrary to the foregoing that he had established a prima facie case permitting an inference of unlawful discrimination, the defendant has established by substantial evidence that the appointment of Ms. Borjes was based upon legitimate, non-discriminatory reasons and plaintiff has failed to show that defendant's action was in fact a pretext for discrimination or unworthy of credence.

Plaintiff sought to bolster his case upon a defense set up in the defendant's answer which referred to a consent decree entered in this Court in a class action brought by women employees which required the Times

---

**2.** Section 703(a) of Title VII, 42 U.S.C. § 2000e–2(a)(1) (1981) provides:
   It shall be an unlawful employment practice for an employer:
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

**3.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**4.** 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

**5.** See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981), McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

**6.** Cf. Goodman v. Heublein, Inc., 645 F.2d 127, 131 (2d Cir. 1981).

to put into effect an affirmative action plan for women as of January 1, 1979. The plan contained a provision that all goals "shall be achieved through affirmative and non-discriminatory efforts."

Upon the trial the defendant disavowed that it was relying upon this defense asserting it had been advanced by reason of plaintiff's statements of reliance upon the decree to support his claim of sex discrimination. In any event, while the defendant was not required to prove that the person hired for the position was more qualified than plaintiff,[7] the evidence establishes that the appointment of Ms. Borjes was based solely upon her background, education and experience which indicated she was eminently well qualified for the position and that her sex was not the factor that resulted in her appointment. Those who were called to make the decision for the appointment gave impressive testimony of plaintiff's inadequacies for that position and his shortcomings over a period of time in the group 4 position.

The plaintiff's contention that he was qualified for the higher position because in his group 4 job he intermittently performed the duties of the group 7 position while working under or during the absence of Monastero, is not sustained by the evidence. To the contrary, the evidence supports a finding that it was Monastero who now and then would do group 4 work because plaintiff and others in that group had failed to carry out assigned responsibilities.

## II.   *The Charge of Retaliation*[8]

In this instance, too, the burdens and order of proof are those established by *McDonnell Douglas*[9] and *Burdine*.[10] In *Grant v. Bethlehem Steel Corporation*,[11] our

Court of Appeals stated that to establish a retaliation claim the plaintiff must show: first, protected participation or opposition under Title VII known by the alleged retaliator; second, an employment action or actions disadvantaging persons engaged in protected activities; and third, a causal connection between the first two elements, that is, a retaliatory motive playing a part in the adverse employment actions.

Plaintiff's charge that he was denied the promotion because of sex discrimination was filed with the EEOC on January 16, 1979. On April 2, 1979 he filed with the EEOC a further charge of retaliation based upon the previous charge of discrimination. Here he contends that defendant engaged in a policy of harassment which included preparation of negative, disparaging and false written evaluations of his work performance, refusal of promotion to group 7 and other positions that opened subsequent to Ms. Borjes' appointment, and assignment of heavier work without providing additional assistance to him or paying him overtime. He further charges that the failure to promote him hinders him from advancement, since upper mobility in job classification is on a step-by-step basis.

A March 27, 1979 evaluation by his supervisor, of which plaintiff complains, noted that he did not take a positive interest in his job; that his slowness prevented his assignment to new tasks; that he was frequently away from his desk without explanation; that he failed consistently to arrive by the posted starting time for his job; and that he took prolonged breaks. Plaintiff disagreed with the appraisal and on April 16, as invited by management, he wrote a letter challenging it as "completely inaccurate and unjust."

---

7.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981); *Lieberman v. Gant*, 630 F.2d 60, 65–67 (2d Cir. 1980).

8.  Section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a) provides:
    It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [an employee] ... has made a charge, testified, as-

sisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

9.  411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

10.  450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

11.  622 F.2d 43, 46 (2d Cir. 1980).

Starting in March 1979, plaintiff applied for a series of jobs that were available, including Media Services Project Assistant, group 7, when two positions opened in April 1979. One appointment went to his co-worker, Paul Beissel, in September 1979 and the other to a female employee. With respect to that position, the Manager of Media/Marketing Research Services informed plaintiff that the decision not to appoint him to either of the group 7 vacancies was because his experience was less than that of many outside applicants and of the two employees selected for the position; that others had better educational qualifications including college and advanced degrees and that plaintiff's work performance was judged second to that of the two applicants the Times had chosen for the positions. At this conference, plaintiff was advised that the Times was ready to respond to any initiative from him to return to college with full support of the Times tuition rebate program and with suggestions on what program would best serve to improve his qualifications. He was urged to adopt a fresh approach in order to put himself in the running for any future opening. In October 1979, plaintiff's immediate superior while noting that plaintiff's work had improved, adhered to his view that he had neither the education nor experience for a group 7 appointment and that this shortcoming had not changed. Again, the supervisor noted that the Times was prepared to help him identify classes that would advance his education.

During the period commencing sometime in March 1979 through 1980, he applied for Computer Programmer, group 8, although at the trial he acknowledged he was not qualified for the position; for Accounts Receivable Clerk; Purchasing Clerk; Newspaper Carrier Supervisor and Payroll Checker. It appears that he randomly applied for whatever position was open whether qualified or not.

Plaintiff charged that the reason for his non-appointment to these positions was a campaign of harassment and retaliation and hostility on the part of two immediate supervisors. The defendant, through the personnel to whom such conduct had been attributed, testified in categorical denial of each and every charge. Thus sharp issues of fact developed on material matters.

■ A key issue is whether the adverse evaluations by defendant's personnel reflected bona fide judgment of plaintiff's performance or was inspired by a retaliatory attitude because plaintiff had filed charges against defendant; also whether the failure to promote him to the various positions he applied for was of similar retaliatory cast or reflected a good faith judgment as to plaintiff's lack of qualification for the jobs he sought.[12] Upon the entire evidence, the Court is persuaded that the defendant's acts of which plaintiff complains in no respect were motivated by or due to any retaliatory or hostile attitude by defendant's supervisory personnel. To the contrary, the evidence sustains a finding that the defendant, through its supervisory personnel, made every effort to encourage plaintiff in improving his work performance so that he would continue in the employ of the defendant, with the expectation that he would advance from position to position. Plaintiff did not avail himself of the proffered opportunities.

Plaintiff's claim of retaliation loses much of its force when viewed against a simple fact. Paul Biessel, a co-worker of plaintiff had also applied and not been appointed to the vacancy which Ms. Borjes filled. Simultaneously with plaintiff he filed both sex discrimination and retaliation charges. However, as already noted, in September 1979 he was appointed to one of two group 7 vacancies at the time his charges, as were plaintiff's, were pending before the EEOC. No reason has been suggested why the defendant treated Biessel on a non-retaliatory basis and adopted a hostile attitude toward plaintiff when both were similarly circumstanced with respect to the charges.

The Times, apart from the testimony of its supervisory and appointment personnel

---

**12.** See *Lieberman v. Gant*, 630 F.2d 60, 67 (2d Cir. 1980).

negating the charge of retaliation, sought to buttress its defense by testimony that it was not aware that plaintiff had filed his discrimination and retaliation charges (respectively January and April 1979) until at the earliest April 10, 1979. The adverse evaluation report had been placed in plaintiff's file on March 27, 1979 and one or two prior drafts had been prepared during the preceding two months but had not been placed in plaintiff's file since they did not comply with the Times' requirements for such reports. Defendant's general attorney to whose attention EEOC complaints filed against the Times would normally be directed, testified that he first learned of plaintiff's charge on April 10, 1979 when it was brought to his attention by an EEOC investigator who subsequently sent him copies of the charges. Other Times personnel who also would be involved in such matters became aware of the charges even later during the course of the general attorney's investigation on the subject. Thus the defendant contends that since it was unaware of the filing of the charges, any contention that the March 27 evaluation or those previously prepared, were inspired by a malevolent attitude toward plaintiff is without foundation.

The plaintiff sought to challenge this testimony at the very conclusion of the trial by seeking a continuance to afford the EEOC an opportunity to produce from its warehouse records to establish that in fact the complaint had been forwarded to the Times on or about the dates the respective discrimination and retaliation complaints had been filed. Since it had been known that this matter had been at issue for more than two years before the trial and plaintiff's counsel had failed to subpoena the EEOC records, the Court denied the application and the trial was concluded.

While the matter was sub judice, plaintiff's counsel advised the Court and opposing counsel that he had been informed that the EEOC files had been retrieved from the warehouse. Counsel requested a reopening of the trial to include an affidavit by an EEOC official in lieu of testimony that according to its records a notice of discrimination was sent to the Times on January 23, 1979 in accordance with the Commission's regular procedure. While defense counsel has opposed the reopening, the application is granted for the sole purpose of receiving the belated evidence. However, it in no way changes this Court's judgment to accept the testimony of defendant's witnesses on this subject as reliable and credible. Plaintiff's counsel argues that from the testimony of mailing a presumption exists that it was received by the addressee. In the distant past such a presumption had force and unless it was overcome by contrary evidence, it was accepted as fact. However, one may take judicial notice of recent notorious inadequacies of the postal service. In this instance, the zip code appearing on the letter is 10030, whereas the Times' zip code number is 10036. But more important, the testimony of the Times' general counsel and others as to the non-receipt of the charges was persuasive and impressive. The Times was sensitive of its relations with its employees. No plausible reason has been suggested why, in this instance, those charged with the responsibility for fostering healthy relationships with employees, particularly those who felt aggrieved, should have ignored the EEOC communication. And finally, and even more pointedly, no reason has been suggested why a member of the bar whose testimony was so positive should have given false testimony. Any such suggestion, on this record, borders on the incredible. The defendant is entitled to judgment dismissing the claims on the merits.

Counsel has requested to be heard on an application for fees under section 706(k) of Title VII.[13] Any motion, with supporting affidavits and briefs shall be made returnable March 5, 1982 at 2:15 p. m. Copies of papers shall be served upon plaintiff's attorney no later than February 26, 1982; response papers, if any, shall be served no later than March 3, 1982; all papers and briefs to be filed with the Court forthwith after service on the opposing side.

13. 42 U.S.C. § 2000e–5(k) (1981).

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.