**Michelle TOUT, Plaintiff,**

v.

**COUNTY OF ERIE, Board of Trustees of Erie Community College, Dennis Digiacomo, Individually and in his Official Capacity, and Rose Moore, Individually and in her Official Capacity, Defendants.**

**No. 95–CV–66H.**

United States District Court,
W.D. New York.

March 30, 1998.

■■■■■■■■■■■■■■■■■■

David J. Sleight, Buffalo, NY, for Plaintiff.

Michelle Tout, Buffalo, NY, pro se.

James A.W. McLeod, Erie County Attorney's Office, Buffalo, NY, Kristin Klein Wheaton, Stephen F. Gawlik, Assistant County Attorney, Buffalo, NY, for Defendants.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all further proceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c). Defendants have filed a motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Item 25). For the reasons that follow, defendants' motion is granted in part and denied in part.

### BACKGROUND

The undisputed facts are as follows. Plaintiff, a black female, began her employment at Erie Community College (ECC) on February 2, 1987. She was initially hired to work as an Educational Opportunity Program counselor at the college's City Campus. That particular position was funded by a grant and was therefore temporary.

On or about August 24, 1988, plaintiff applied for a permanent position in the counseling unit located at the college's North Campus. Her application was recommended by the Faculty Federation of Erie Community College (the Faculty Federation) and the ECC Director of Human Resources in September 1988. Plaintiff's transfer was approved approximately six months later by the defendant Board of Trustees.

In January 1991, plaintiff filed a charge of employment discrimination with ECC's Affirmative Action/EEO Office in which she claimed that she had been subjected to ongoing discrimination and harassment by defendant DiGiacomo since September 11, 1989 (Item 15, ¶ 20; Item 17, ¶ 20; Item 30, Ex. C).[1] Plaintiff also alleged that minority students were being discriminated against and harassed by members of ECC's faculty and staff (Id.). Plaintiff simultaneously filed a grievance with the Faculty Federation based upon those same allegations (Item 15, ¶ 19; Item 17, ¶ 19).

Plaintiff requested a medical leave of absence from August 10, 1992 to October 31, 1992 (Item 25, Ex. E). According to plaintiff, she was suffering from stress-related physical and mental illness because of defendants' discriminatory and harassing conduct toward her. Her request for leave was initially denied by defendant DiGiacomo, but later granted by ECC's Director of Human Resources (Item 15, ¶ 24; Item 17, ¶ 24; Item 25, Ex. E).

On January 3, 1994, plaintiff again commenced a period of absence from work, allegedly due to her stress-related illnesses.[2]

During her absence, plaintiff filed a verified complaint, dated January 7, 1994, with the New York State Human Rights Commission (Item 25, Ex. B). According to the complaint, defendants had "continued an ongoing pattern of unequal treatment and harassment" against her based on her race (Id.). Plaintiff claimed that this unequal treatment included denial of vacation requests, denial of educational advancement leave requests, being over scheduled with an unfair distribution of work, and having false accusations lodged against her. She made specific reference to a single incident on December 16, 1993, where defendant Moore

---

1. In her discrimination charge, plaintiff claimed that on December 11 (year unspecified), defendant DiGiacomo barked at her in full view of students. She also alleged that on December 13 (year unspecified), DiGiacomo singled out plaintiff and another minority counselor for criticism regarding their job performance, and that a white counselor who had been derelict in her duty was not criticized. In general, plaintiff claimed that DiGiacomo was subjecting her to verbal abuse and snide remarks, and impeding her professional efforts.

2. Plaintiff remained out of work until her termination on March 2, 1995.

allegedly wrote a false counseling memo against her. Plaintiff complaint was cross-filed with the Equal Employment Opportunity Commission (EEOC).

On January 28, 1994, plaintiff requested medical leave for an indefinite period to commence from her January 3, 1994 absence (Item 25, Exs. D & E). Defendant DiGiacomo denied the request, citing plaintiff's poor attendance record as the basis for his decision (Id. at Ex. E, p. 1).

Subsequently, the Director of Human Resources asked plaintiff to provide an anticipated return to work date so that her request could be processed further (Item 30, Ex. 1). Plaintiff responded that her doctor recommended a recovery period of two to six months, and she designated April 4, 1994 as her tentative return date (Id., Ex. J). In a letter dated March 8, 1994, the Director of Human Resources informed plaintiff that her request for leave was being denied due to her record of absenteeism. Plaintiff was also notified that her employment would be terminated if she did not return to work by April 4, 1994 (Item 25, Ex. E, p. 1). That date was later extended to April 25, 1994 (Id. at Ex. E, p. 3).

Plaintiff did not return to work on the specified date, and the college informed her that a hearing would be scheduled regarding the circumstances of her impending termination (Id. at Ex. E, p. 4). Although several hearing dates were set in the ensuing months, each date was canceled by the union due to plaintiff's unavailability (Item 25, Ex. D, p. 4; Item 30, ¶ 18 & Ex. O, p. 4).

According to plaintiff, the EEOC issued a notice of right to sue letter on or about November 8, 1994.[3]

Plaintiff's termination hearing was finally held on December 12, 1994. Plaintiff did not appear at the hearing on the advice of her mental health care provider (Item 30, ¶ 18 & Ex. L). Neither party presented witnesses (Item 25, Ex. D, p. 3).

Upon reviewing the facts as stipulated by the parties and the exhibits in the record,

Hearing Officer Anthony M. Romano found that plaintiff had neither made a good faith effort to return to active employment, nor had she filed any grievance under her collective bargaining agreement (Item 25, Ex. D). Mr. Romano concluded that plaintiff had little interest in explaining her lengthy absence from work and that she did not value her employment with ECC. He recommended that plaintiff be terminated (Id.).

On January 27, 1995, prior to her termination, plaintiff commenced this Title VII action *pro se*, alleging that defendants discriminated against her in her employment based on her race, color and sex.

Plaintiff was notified of her termination by letter dated March 2, 1995 (Item 25, Ex. C).

Plaintiff subsequently retained counsel and filed an amended complaint on January 31, 1996. Plaintiff alleges that she was subjected to discriminatory and harassing treatment throughout her employment, that she filed charges with her employer regarding the alleged discrimination, that she was retaliated against for filing those grievances, that she was subsequently terminated, and that she suffered loss of income and physical, psychological and emotional distress as a result. Plaintiff claims that defendants' conduct violated Title VII, 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. §§ 1981, 1982, 1983 and 1985; the New York Human Rights Law, Executive Law § 290 *et seq.*, and the common law of the State of New York.

Following her discharge, plaintiff filed a union grievance which went to arbitration. Pursuant to the arbitrator's decision dated March 6, 1997, plaintiff was reinstated to her position without back pay but with full seniority. She was placed on probation for two years commencing from the date of reinstatement with respect to attendance-related issues (Item 30, Ex. O, p. 7).

Plaintiff's complaint can be read as attributing her termination to both an ongoing pattern of racial discrimination and to retaliation. On June 2, 1997, defendants moved for partial summary judgment. Defendants

---

**3.** The EEOC's notice of right to sue letter is not included in the record before the court, nor has any other documentation from the EEOC been presented. Accordingly, this court is unable to confirm the date of issuance.

argue that (1) plaintiff has failed to demonstrate a *prima facie* case of discriminatory termination, (2) plaintiff's retaliation claims and discriminatory discharge claim are barred because she did not raise them in the EEOC complaint, (3) the ruling of the New York Workers' Compensation Board has preclusive effect as to plaintiff's claim of a workplace injury, and (4) defendants DiGiacomo and Moore cannot be sued individually. Defendants arguments are addressed in turn below.[4]

### DISCUSSION

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, supra,* 477 U.S. at 248; *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.) *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). Thus, if there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or

on the basis of conjecture or surmise. *Bryant, supra,* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation "to make a sufficient showing of an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Burke v. Bevona,* 931 F.2d 998, 1001 (2d Cir.1991). In other words, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir.1994).

Although caution must be exercised in granting summary judgment where motive is genuinely in issue, summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact. *McLee v. Chrysler Corp.* 109 F.3d 130, 135 (2d Cir.1997); *see also Gallo, supra; Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 19 (2d Cir.1995); *Woroski v. Nashua Corp.,* 31 F.3d 105, 110 (2d Cir.1994).

> As stated by the Second Circuit in *Gallo:*
> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.... It must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

22 F.3d at 1224.

### I. DISCRIMINATORY DISCHARGE.

Title VII of the Civil Rights Act of 1964 provides that:

> agree with plaintiff's assessment, I decline her request that defendants' motion be denied on this ground, and will instead consider the merits of the grounds for partial summary judgment raised by defendants.

---

**4.** Plaintiff claims that defendants' statement of material facts pursuant to Local Rule 56 is procedurally defective in that it contains allegations that are specifically controverted by the pleadings and legal arguments on matters of law properly reserved for decision by the court. While I

It shall be unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's race, color religion, sex, or national origin.

42 U.S.C. § 2000e–2(a). In a Title VII case, the burden a plaintiff bears in proving discriminatory discharge follows the three-part burden shifting test enunciated in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and further developed in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under that test, the plaintiff first must establish a *prima facie* case of racial discrimination. Should the plaintiff meet this *prima facie* burden, the burden then shifts to the defendants to provide a legitimate nondiscriminatory reason or motive for the termination. Finally, the burden shifts back to the employee to show that the defendants' stated reasons or motives are merely a pretext for discrimination. The plaintiff always bears the ultimate burden of proof. *Hicks, supra*, 509 U.S. at 510–11. In order to prevail, the plaintiff must ultimately show that discrimination played a motivating role in, or contributed to, the employer's decision. *Id.* at 514–15; *Renz v. Grey Advertising, Inc.*, 135 F.3d 217, 221 (2d Cir.1997); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995) ("[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors.")

Following discovery in this case, defendants moved for summary judgment, contending that plaintiff has not made any allegations nor offered any facts sufficient to establish a *prima facie* case for discriminatory termination. Furthermore, defendants argue that plaintiff was terminated because of her unsatisfactory attendance record and her refusal to attend hearings to address that issue. They claim that even if a *prima facie* case does exist, the plaintiff cannot show termination because of racial motivation.

■ In order to establish a *prima facie* case of discriminatory discharge, the plaintiff must show that (1) she belongs to a protected class, (2) she was performing her duties satisfactorily, (3) she was discharged, and (4) her discharge occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in a protected class. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995); *Chambers, supra*, 43 F.3d at 37. The burden that a plaintiff must meet in the *prima facie* stage is *de minimis*. *Cronin, supra*, 46 F.3d at 203–204 (2d Cir.1995); *Chambers, supra*, 43 F.3d at 37; *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988).

■ The first and third elements of plaintiff's claim are undisputed. As to the second element, plaintiff claims that defendants never raised an issue as to unsatisfactory job performance. Neither party has come forward with any employment records or other documentation regarding this issue. It appears, however, that plaintiff's job performance was reviewed in the course of her arbitration proceedings (Item 30, Ex. O). There, the union pointed to undisputed testimony that plaintiff had always done a satisfactory job. She completed probation, received tenure, was promoted in 1993 and received satisfactory evaluations (Id. at p. 4). While the record does establish that plaintiff had prolonged absences from work because of illness, there is no evidence that her attendance was the basis for any negative assessment or personnel action prior to her termination. In other words, there is nothing in the record to indicate that plaintiff's medical absences were part of the criteria by

which her job performance was assessed. Thus, plaintiff has met her *de minimis* burden of showing that she performed her duties satisfactorily.

■ As to the fourth element, the inference of discriminatory motive may be satisfied in a variety of ways. For example, an inference of discrimination may be drawn from evidence tending to show preferential treatment given to employees outside the protected class, *Stratton v. Dep't for the Aging,* 132 F.3d 869, 878–79 (2d Cir.1997) (citing *Fisher v. Vassar College,* 114 F.3d 1332, 1336 (2d Cir.1997) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (Jan. 20, 1998)), or, more generally, upon the timing or sequence of events leading to the plaintiff's termination. *Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81, 91 (2d Cir.1996).

Here, plaintiff states that she was the only black woman counselor employed at ECC (Item 15, ¶ 2; Item 30, ¶ 7),[5] and claims that she was subjected to discriminatory and harassing treatment during the course of her employment (Item 15, ¶ 15; Item). More specifically, plaintiff states that she was singled out for heightened policing of her movements and activities on the job, and that she was not provided with effective assistance from support staff (Item 15, ¶ 15; Item 30, ¶¶ 11, 12, & Ex. G). Plaintiff alleges that she brought these circumstances to defendants' attention on numerous occasions, to no avail (Item 15, ¶ 18).

In her EEOC complaint, plaintiff also alleged that she was treated unequally with respect to vacation requests and leave requests (Item 25, Ex. B). It is undisputed that she was denied her January 1994 request for an unpaid leave because of illness, and that her continued absence following the denial of leave was the catalyst for her termination. On the record presented, I find that plaintiff has met her *de minimis* burden of showing

disparate treatment and a sequence of events sufficient to raise the inference of a discriminatory motive for her termination.

■ The burden of production now shifts to the employer to articulate a legitimate, clear, specific and nondiscriminatory reason for the termination. *McDonnell Douglas Corp., supra,* 411 U.S. at 802. " '[T]he defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions, which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center, supra,* 509 U.S. at 502, 113 S.Ct. 2742, 2745, 125 L.Ed.2d at 416 (quoting *Burdine, supra,* 450 U.S. at 254–55).

Defendants claim that plaintiff was terminated for excessive absences and refusal to attend hearings to address those absences. The record shows that plaintiff was out on medical leave from August 6, 1992 to December 10, 1992. However, there is no documentation of any other time off, except for plaintiff's second medical absence which commenced in January 1994.[6] After her January 1994 request for leave was denied, plaintiff remained out of work. Plaintiff was notified on April 29, 1994 that a hearing would be scheduled regarding her impending termination. She did not attend the hearing.

In response to defendants' claims, plaintiff points to her medical reasons for missing work and the termination hearing, the lack of any dispute as to the legitimacy of her illness, and the lack of any dispute as to whether her illness was supported by medical documentation (Item 30, Ex. O). In sum, plaintiff argues that she was too ill to come to work, that her absences were legitimate and documented, and that defendants subjected her to a disciplinary discharge in order to get rid of her despite their knowledge as to her circumstances.

---

5. In her affidavit, plaintiff states that there was one other minority counselor who was male (Item 30, ¶ 7).

6. Defendants' burden here is a burden of production. I note that defendants have not submitted plaintiff's attendance record or any documentation showing that her absences were the subject

of any review, warnings, or disciplinary measures prior to her termination on the grounds of absenteeism. Nor have they submitted an absenteeism policy or other criteria by which they determined that plaintiff's absences were "excessive."

All that is necessary to permit the case to proceed is evidence sufficient to raise an issue of fact as to whether the defendants' proffered reason for plaintiff's termination was a pretext for discrimination. *See Gallagher v. Delaney,* 139 F.3d 338, 350 (2d Cir. 1998); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1309 (2d Cir.1995); *Fisher, supra,* 114 F.3d at 1337–38. I find that plaintiff has succeeded in doing so here.

Accordingly, defendants' motion for summary judgment on the claim of discriminatory discharge is denied.

## II. FAILURE TO RAISE CLAIMS IN THE EEOC CHARGE.

█ A Title VII claimant may file suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter. *See* 42 U.S.C. §§ 2000e–5(e) and (f). In an action in which these procedural requirements have been satisfied, the plaintiff may raise any claim that is "reasonably related" to those asserted in the EEOC filing, even if that claim was not expressly addressed by the EEOC. *Cornwell v. Robinson,* 23 F.3d 694, 706 (2d Cir. 1994); *see also, Owens v. New York City Housing Authority,* 934 F.2d 405, 410–11 (2d Cir.), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991); *Almendral v. New York State Office of Mental Health,* 743 F.2d 963, 967 (2d Cir.1984).

The Second Circuit has recognized three types of situations where claims not alleged in an EEOC charge are sufficiently related to the charge allegations to allow the claims to go forward in a civil action. *Butts v. City of New York Dep't of Housing,* 990 F.2d 1397, 1402 (2d Cir.1993).

The first is essentially an allowance of loose pleading. EEOC charges are often prepared without the benefit of counsel. Given that the primary purpose of the charge is to alert the EEOC to the alleged discrimination, the court has allowed claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (quoting *Smith v. American Pres-*

*ident Lines, Ltd.,* 571 F.2d 102, 107 n. 10 (2d Cir.1978)); *see Gomes v. Avco Corp.,* 964 F.2d 1330, 1334 (2d Cir.1992); *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir. 1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

The second type is a claim alleging retaliation by an employer against an employee for filing an EEOC charge. *Butts,* 990 F.2d at 1402 (citing *Malarkey v. Texaco, Inc.,* 983 F.2d 1204 (2d Cir.1993)); *Owens,* 934 F.2d at 410–11; *Goodman v. Heublein, Inc.,* 645 F.2d 127, 131 (2d Cir.1981); *Kirkland v. Buffalo Bd. of Educ.,* 622 F.2d 1066, 1068 (2d Cir.1980). In such cases, the EEOC charge requirement is not excused because the new claims were likely to be discovered by the EEOC investigation. Rather, the allegations of retaliation are viewed as stemming from both the earlier discriminatory conduct and the filing of the charge itself. *Owens,* 934 F.2d at 410–11.

The third type of claim arises where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner as alleged in the EEOC charge. *Butts,* 990 F.2d at 1402–03 (citing *Almendral,* 743 F.2d at 967).

In the present case, defendants maintain that this court has no jurisdiction over plaintiff's retaliation claim or discriminatory discharge claim because those allegations were not raised in the EEOC charge and are not "reasonably related" to the conduct alleged in the charge.

Plaintiff made the following allegations in her EEOC charge:

1. I am a black female. I believe that because of this, I have been denied equal terms, conditions, and privileges of employment.

2. On December 16, 1993, the respondent through Rose Moore, ... was drafting a counseling memo for me to sign which stated that I refused to see students. She informed me that she was instructed to write this memo against me by Dennis DiGiacomo, ....

3. On information and belief the respondent through Dennis DiGiacomo, Dean of Students has continued an ongoing pattern

of unequal treatment and harassment against me while I have been employed by denying my vacation requests; denying my educational advancement leave requests; overscheduling me with an unfair distribution of student appointments; and making false accusations against me regarding misplaced videotapes.

4. [alleging damages]

5. Based on the foregoing, I charge the respondent with an unlawful discriminatory practice relating to employment because of my race/color . . . .

## A. Retaliation Based on 1991 Complaints.

■ Plaintiff, in her amended complaint, claims that because of her complaints of discrimination made to her employer in 1991, defendant DiGiacomo and his staff "stepped up" their pattern of discriminatory and harassing treatment against her (Item 15, ¶ 22).

Thus, plaintiff claims that she was subjected to retaliatory conduct for three years prior to filing her EEOC charge. That allegation was not included in the charge, nor can such an inference be drawn from the allegations that were made. The charge were clearly insufficient to have prompted an investigation of retaliation based on a 1991 grievance alleging discrimination.

What plaintiff did allege in her EEOC charge was a continuing course of discrimination and harassment throughout her employment, along with a single incident in 1993 that postdated her grievances by almost three years. One might ask whether plaintiff's open-ended charge of discrimination can support any claims that may fall within its range, including a claim that some of the alleged conduct was retaliatory. When presented with a similar question, the Seventh Circuit concluded that "the goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship." *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992) (cited in *Butts,* 990 F.2d at 1403).

I find that plaintiff's claim is not reasonably related to the allegations in her EEOC charge under any of the three theories presented.

## B. Discriminatory Discharge.

■ Defendants maintain that plaintiff's claim of discriminatory discharge is not reasonably related to the "few allegations of discrimination alleged in the administrative complaint" (Item 25, ¶ 21). Here, I disagree.

The EEOC charge alleges that defendants' discriminated against plaintiff in denying her requests for vacation and leave time. After filing her EEOC charge, plaintiff was denied her request for a medical leave of absence. Her ensuing "unauthorized leave" was the basis for her termination. These allegations fall within the third theory articulated above. Plaintiff has alleged further incidents of discrimination—the denial of leave—carried out in precisely the same manner as alleged in the EEOC charge.

Accordingly, I find that this court does not have jurisdiction over claims of retaliation arising from the filing of grievances in 1991. This court does have jurisdiction over plaintiff's claim of discriminatory discharge. Defendants' motion is therefore granted as to plaintiff's retaliation claim and denied as to the discriminatory discharge claim.

## III. WORKPLACE INJURY.

Plaintiff alleges in her complaint that as a result of defendants' retaliatory, discriminatory and harassing conduct, plaintiff suffered stress-related physical and mental illness which necessitated her absence from work (Item 15, ¶ 23).

While plaintiff was on medical leave from August 1992 to December 1992, she filed a claim for workers' compensation benefits (Item 30, Ex. M). In a Notice of Decision dated July 16, 1996, Workers' Compensation Law Judge Cooper found that plaintiff "did not sustain an accidental injury or occupational disease arising out of the course of employment" (Id., Ex. N).

## A. Title VII Claim.

 Defendants argue that any claim that the workplace was the source of plaintiff's physical and mental injuries is precluded by that workers' compensation board determination.

The Supreme Court has consistently held that unreviewed state administrative proceedings have no preclusive effect on Title VII claims. In *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), a state administrative law judge determined that the plaintiff's employer was not motivated by racial prejudice in seeking to discharge the plaintiff. After seeking an administrative remedy, the plaintiff brought a Title VII action against his employer in federal district court. The court granted the employer's summary judgment motion on the ground that the ALJ's ruling on the issue of motivation was entitled to preclusive effect. The Court of Appeals reversed. On review, the Supreme Court held that Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims. *See also, Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 469–70, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (holding that final state court judgments are entitled to full faith and credit in Title VII actions, but indicating that unreviewed determinations by state agencies do not preclude trial de novo in federal court); *Chandler v. Roudebush*, 425 U.S. 840, 848, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) (Congress intended to accord all employees the right to a trial *de novo* on Title VII claim after rejection of such claim in administrative hearing); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 48, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) ("[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.").

Defendants claim to be aware of the well-settled principle articulated above. They state that where the administrative body directly addresses the issue of employment discrimination, as in the cases set forth above, "it makes perfect sense that the issue ... should be preserved for federal court review" (Item 25, ¶ 35). Defendants argue, however, that the issue sought to be precluded here does not relate to whether or not there was employment discrimination, but rather whether plaintiff's injuries were work-related.

Apparently, defendants attempt to distinguish the administrative proceeding here on the ground that it addressed the impact of the alleged discrimination rather than the threshold question of whether the discrimination occurred. I find their unsupported argument to be without merit.

## B. 42 U.S.C. §§ 1981, 1982, 1983 and 1985.

Defendants assert that, regardless of any claim plaintiff may assert under Title VII, a workers' compensation determination does have preclusive effect with respect to any claim invoked under 42 U.S.C. §§ 1981, 1982, 1983 and 1985.

In *University of Tennessee v. Elliott*, the Supreme Court addressed the preclusion issue as it applies to § 1983 and other of the Reconstruction-era Civil Rights Acts. In contrast to its holding with respect to Title VII claims, the Court stated that "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. at 799 (quoting *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)).

 This court must therefore turn to New York law and determine whether a state court would apply the doctrine of collateral estoppel to the workers' compensation determination in this case. The requirements for collateral estoppel under New York law are that the issue be identical and necessarily decided in the prior proceeding, and that the party against whom preclusion is sought be accorded a full and fair opportunity to contest the issue in the prior proceeding. *Allied Chem. v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 276, 532 N.Y.S.2d 230, 528 N.E.2d 153 (1988), *cert. denied*, 488

U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989); *see also Town of Deerfield v. FCC,* 992 F.2d 420, 429 (2d Cir.1993) (citing *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)).

Defendants have not submitted a record from the administrative hearing. The exhibits presented by both parties show only that plaintiff brought a compensation claim, that the claim was denied, that plaintiff sought review of that determination, and that review is pending. This court is unable to determine whether the administrative proceedings satisfy the standard set forth in *Utah Construction and Mining Co.* The record does not contain information regarding the nature of the issues presented to the workers' compensation judge, the factual findings that were made, or plaintiff's opportunity to litigate the issues presented.

Accordingly, defendants' motion is denied with respect to this issue.

## IV. DEFENDANTS SUED IN THEIR INDIVIDUAL CAPACITY.

As defendants point out, this court previously noted that defendants DiGiacomo and Moore cannot be sued in their individual capacity. Item 12, p. 8 (citing *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313–17 (2d Cir. 1995)). In ruling on defendants' prior motion to dismiss, the court permitted plaintiff to amend her complaint, but stated that plaintiff would be prudent to sue DiGiacomo and Moore in their official capacity only. *Id.*

Plaintiff acknowledges in her brief that these defendants should not have been sued individually.

Accordingly, as has already been determined by this court and conceded by plaintiff, defendants' motion for summary judgment is granted with respect to all claims against defendants DiGiacomo and Moore in their individual capacities.

## CONCLUSION

For the reasons set forth above, defendants' motion for partial summary judgment (*Item 25*) is GRANTED as to plaintiff's claim of retaliation based on 1991 grievances and all claims against defendants DiGiacomo

and Moore in their individual capacities. Defendants' motion is DENIED as to plaintiff's claim of discriminatory discharge and the issue of collateral estoppel.

**SO ORDERED.**