934 F.2d 405
 55 Fair Empl.Prac.Cas. 1604,
56 Empl. Prac. Dec. P 40,774
Catherine OWENS, Plaintiff-Appellant, Cross Appellee,
v.
NEW YORK CITY HOUSING AUTHORITY, H. Bresky, J. Arakel, L.
Lieberman, L. Lefkowitz, C. Grossman, and R. Coss,
Defendants-Appellees, Cross Appellants.
 Nos. 733, 816, Dockets 90-7527, 90-7541.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 14, 1991.
Decided May 21, 1991.
 
 Martin F. Marvet, Cleary, Gottlieb, Steen & Hamilton, (Richard F. Ziegler, of counsel), New York City, for appellant and cross appellee.
 Henry Schoenfeld, New York City Housing Authority Law Dept. (Manuel H. Quintana, General Counsel), New York City, for appellee and cross appellant.
 Before OAKES and WALKER, Circuit Judges, and WEXLER, District Judge.*
 WALKER, Circuit Judge:
 
 
 1
 Plaintiff Catherine Owens appeals from a grant of summary judgment in favor of defendants New York City Housing Authority and individual employees Arakel, Bresky, Lieberman, Lefkowitz, Grossman, and Coss (collectively, the Housing Authority), on her claims under the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621, et seq. The district court ruled that the adverse outcome of disciplinary charges litigated in state court precluded her from proving that she was qualified for the job--an essential element on her claim of age discrimination--and that her claim of retaliation should be dismissed for lack of subject matter jurisdiction, since it had not been first filed with the Equal Employment Opportunity Commission (EEOC). Since we disagree with both rulings, we reverse and remand for further proceedings.
 
 BACKGROUND
 
 2
 In January, 1977, the Housing Authority hired Catherine Owens. In 1978, Owens became a "housing assistant," responsible for maintaining records and reports and for meeting with tenants. Three years later, at the age of 51, she began working at LaGuardia Houses, a housing project managed by the Authority. In late 1981, defendant Lawrence Lefkowitz became Assistant Manager of LaGuardia Houses and, in late 1982, defendant John Arakel became Housing Manager. Lefkowitz and Arakel supervised Owens.
 
 
 3
 Owens' relationship with Lefkowitz and Arakel was strained. Owens alleges that in early 1983, Lefkowitz began to interfere with the performance of her job and verbally abused her. According to Owens, Lefkowitz told Owens that her "problems" had to do with her age and entry into menopause. Owens says that Arakel also abused her verbally and interfered with her work. She alleges that this abuse by both supervisors on occasion extended to physical pushing or shoving.
 
 
 4
 Starting in February, 1983, Owens began to complain about Arakel and Lefkowitz. She raised the issue of her supervisors' behavior in several letters to Housing Authority superiors and requested transfer to another project. She also sought the assistance of the Institute for Mediation and Conflict Resolution ("IMCR"), where she filed actions against both Arakel and Lefkowitz. Lefkowitz appeared before an IMCR mediator in April, 1983, who thereupon issued an award requiring Lefkowitz and Owens not to harass or menace each other. The IMCR action against Arakel was later transferred to criminal court, where in August, 1983, Owens received a protective order directing Arakel to stay away from her.
 
 
 5
 At the end of March, 1983, at the request of Arakel and Lefkowitz, the Housing Authority suspended Owens without pay and required her to submit to psychiatric evaluation. The test results, however, found no reason to disqualify her from her position as housing assistant. In May, 1983, at Owens' request, she was transferred to another project, Carver Houses.
 
 
 6
 Sometime during the spring of 1983, and after she had contacted the Housing Authority's internal office for equal employment opportunity, Owens took her complaints to the New York State Division of Human Rights and the EEOC. On June 27, 1983, acting pro se, she filed formal charges with the EEOC against the Housing Authority, Arakel, and Lefkowitz. On April 8, 1984, the EEOC issued Owens a right to sue letter.
 
 
 7
 In the meantime, in August, 1983, the Housing Authority filed fourteen formal disciplinary charges against Owens. Except for the first charge, which alleged that Owens had been disrespectful to another supervisor in July 1981, the charges were based on the reports of Arakel and Lefkowitz, and concerned incidents allegedly occurring during the period July 21, 1981, to March 29, 1983. Twelve of the thirteen charges alleged, among other things, that Owens had been disrespectful, insubordinate, and abusive. The thirteenth alleged that Owens had not properly performed her duties of processing tenant income reports.
 
 
 8
 Shortly after filing these disciplinary charges, the Housing Authority, through its counsel, began settlement talks with Owens, who was represented by counsel. Negotiations then broke off when, according to Owens' counsel, the Housing Authority refused to engage in plea-bargaining because Owens had filed charges with the EEOC. At no time, however, did Owens file charges with the EEOC complaining of retaliation for the Housing Authority's refusal to plea bargain.
 
 
 9
 After settlement efforts failed, a Housing Authority hearing officer conducted a full hearing, over eight days between August and December 1983, on the disciplinary charges brought against Owens. Pursuant to N.Y. Civil Service Law Sec. 75(2), Owens was permitted to be represented by counsel and to present and examine witnesses. On all but the last day in which she chose to represent herself, Owens was represented by counsel. Owens, Lefkowitz, Arakel, and the 1981 supervisor testified. The hearing officer found each of the fourteen charges proven, concluded that Owens' behavior was "disorderly," "disruptive," "insubordinate," and "abusive," and recommended dismissal. The Housing Authority adopted the findings and in June, 1984, terminated her employment.
 
 
 10
 Owens then commenced a proceeding in New York State Supreme Court under Article 78, N.Y.Civ.Prac. L. & R., to review the administrative decision. In a decision dated February 25, 1985, the Article 78 court upheld the hearing officer's finding of "gross insubordination."
 
 
 11
 In July, 1984, shortly after she received her right-to-sue letter from the EEOC, but before her discharge had been affirmed by the Article 78 court, Owens commenced the instant action. She claims that (1) her termination was the result of age discrimination or, alternately, was in retaliation for letters to superiors complaining of age discrimination, all in violation of the ADEA; and (2) after she filed charges with the EEOC on her age claim and wrote letters to her superiors claiming race as well as age discrimination, the Housing Authority retaliated, in violation of the ADEA and Title VII, by refusing to plea-bargain her disciplinary charges.[1]
 
 
 12
 In October, 1985, the Housing Authority unsuccessfully moved for summary judgment. The district court rejected the Housing Authority's argument that no genuine issue of fact existed as to Owens' qualifications. The district court also found that by presenting direct evidence of discrimination, Owens had raised a triable issue as to whether defendants' allegations of insubordination and incompetence were pretextual. The district court relied primarily on Lefkowitz's reported comment concerning Owens' age and entry into menopause, noting that the comments were "direct evidence" of Owens' supervisor's state of mind. The district court also rejected the Housing Authority's argument that res judicata precluded Owens' federal claims, because the Article 78 reviewing court could not have considered an age discrimination claim brought by Owens.
 
 
 13
 The district judge later granted permission to the Housing Authority to move for summary judgment a second time. The district judge granted this second motion. He ruled that the state court proceedings which affirmed the Housing Authority's guilty findings on the disciplinary charges precluded her from litigating the issue of her qualification for the job, and thus from establishing a prima facie case of age discrimination. The district judge also dismissed plaintiff's claim of retaliation arising out of the Housing Authority's refusal to plea bargain, on the grounds that subject matter jurisdiction was lacking since the retaliation claim was not the subject of a prior complaint to the EEOC.
 
 
 14
 Owens appeals both rulings. A cross-appeal by the Housing Authority was not pressed and is deemed abandoned.
 
 DISCUSSION
 
 15
 We review the district court's grant of summary judgment de novo, applying the same standard as the district court. We must determine whether "a genuine issue as to any material fact exists and if the moving party is entitled to judgment on the merits." Taggart v. Time, Inc., 924 F.2d 43, 45-46 (2d Cir.1991). In deciding a summary judgment motion, "[i]t is not the trial court's function to weigh the evidence and resolve the factual issues; rather, its role on such a motion is to determine as a threshold matter whether there are genuine unresolved issues of material fact to be tried." Gibson v. American Broadcasting Cos., 892 F.2d 1128, 1132 (2d Cir.1989). On appeal, all doubts in the factual record must be resolved in favor of the non-movant. Taggart, 924 F.2d at 45-46.
 
 A. The Age Discrimination Claim
 
 16
 We turn first to the district court's decision that the state court finding of misconduct collaterally estopped Owens from presenting a prima facie case of age discrimination under the test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). McDonnell Douglas, which applies to ADEA actions, see Montana v. First Fed. Savings & Loan Ass'n of Rochester, 869 F.2d 100, 103 (2d Cir.1989), requires a plaintiff alleging discriminatory termination to show (1) that she is within the protected class; (2) that she is qualified for the position; (3) that she has been terminated; and (4) that a younger individual has replaced her. Id. Once the prima facie showing is made, the employer bears the burden of demonstrating legitimate non-discriminatory reasons for the discharge. If the employer is able to demonstrate such reasons, the burden again shifts to the employee to show that the articulated reason is pretextual. See also Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981).
 
 
 17
 Owens does not here dispute the state court findings of misconduct. She does argue, however, that the finding should not be held to preclude her from proving the second element of a prima facie claim under McDonnell Douglas--that she is qualified for the position of housing assistant. We agree.
 
 
 18
 In order to apply the doctrine of collateral estoppel or issue preclusion, there must be an identity of issue between the prior action and the present action. The issue must actually have been resolved in the prior action, and resolution of the issue must have been necessary. Further, there must have been "a full and fair opportunity to contest the decision said to be controlling." Schwartz v. Public Adm'r, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969); see also D'Arata v. New York Central Mutual Ins., 76 N.Y.2d 659, 665-66, 563 N.Y.S.2d 24, 28, 564 N.E.2d 634, 638 (1990).
 
 
 19
 Here, while the state court issue--misconduct--was necessarily resolved after a full and fair opportunity to contest it, the issue was not the same as the one said to be precluded--job qualification. McDonnell Douglas requires only a minimal showing of qualification to establish a prima facie claim. Owens only needs to demonstrate that she "possesses the basic skills necessary for performance of [the] job." Powell v. Syracuse Univ., 580 F.2d 1150, 1155 (2d Cir.), cert. denied, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978).
 
 
 20
 The state court never passed on Owens' competence to perform her work. Rather, it upheld the Trial Officer's findings of misconduct and "gross insubordination."[2] We have no doubt that such misconduct may certainly provide a legitimate and non-discriminatory reason to terminate an employee. This misconduct is distinct, however, from the issue of minimal qualification to perform a job. An individual may well have the ability to perform job duties, even if her conduct on the job is inappropriate or offensive. Accordingly, the finding of misconduct here cannot preclude Owens from showing her qualification for employment as required by McDonnell Douglas.
 
 
 21
 We note that in the first opinion denying summary judgment, the district court ruled that by presenting evidence of "competence," Owens had succeeded in raising a genuine issue as to her qualification for the job. The district court denied summary judgment to defendants on that basis. The conclusion was based on evaluations of Owens' work by individuals other than Arakel and Lefkowitz, whose relationship with Owens was admittedly poor.
 
 
 22
 Owens should not have been precluded by the state court finding of misconduct from litigating her qualification to perform her job.
 
 
 23
 Since we are remanding on the issue of job qualification, there is no need to address Owens' further argument that she has produced sufficient direct evidence of discrimination to entitle her to bypass the requirements of McDonnell Douglas altogether, and to show simply that an "illegitimate factor played a motivating or substantial role" in her firing. See Grant v. Hazelett Strip-Casting, 880 F.2d 1564, 1568 (2d Cir.1989).
 
 
 24
 The Housing Authority further contends that even if the state misconduct findings do not negate job qualification, they demonstrate that Owens' discharge was based on legitimate non-discriminatory grounds and that summary judgment should have been granted on that basis. The problem with this argument, however, is that the district court found that Owens had presented sufficient direct evidence of age discrimination based on comments by Arakel and Lefkowitz to withstand summary judgment. The Housing Authority's rejoinder that the evidence of these comments is uncorroborated and not credible is a jury argument inappropriate on a motion for summary judgment where every reasonable inference is to be drawn in favor of the non-movant.
 
 
 25
 Only if no reasonable trier of fact could find in favor of the non-moving party should summary judgment be granted. Taggart, 924 F.2d at 46. Here the district court correctly found that the reported comments of Arakel and Lefkowitz relating to Owens' age raised a triable issue as to whether the articulated reasons for her firing were pretextual. While the statements presented were not numerous, they were made by individuals with substantial influence over Owens' employment. Arakel and Lefkowitz supervised Owens and were responsible for the vast majority of the disciplinary charges brought against her. Drawing all factual inferences in favor of Owens, as we must, we agree that the comments of Arakel and Lefkowitz raise a genuine issue of fact on the issue of pretextuality.
 
 
 26
 Lastly, the Housing Authority argues in support of the judgment below that Owens' claims are barred by the doctrine of res judicata, since the Article 78 review proceeding provided Owens with a full and fair opportunity to raise her retaliation and discrimination claims. The Housing Authority is plainly wrong.
 
 
 27
 Under New York law, the Article 78 proceeding was limited to the issues of whether the administrative determination was made in violation of lawful procedure, was arbitrary or capricious or an abuse of discretion, or was not supported by substantial evidence. N.Y.Civ.Prac. L. & R. Sec. 7803(3) and (4). The Article 78 reviewing court was not empowered to address Owens' claims of discrimination or retaliation. Owens' claims are not barred by the doctrine of res judicata.
 
 
 28
 B. Subject Matter Jurisdiction over the Retaliation Claim
 
 
 29
 The district court found that subject matter jurisdiction did not exist over Owens' claim that the Housing Authority had retaliated against her by refusing to plea bargain her disciplinary charges. The district court reasoned first that since the charges had not been filed with the EEOC before being presented to the district court, and were not otherwise "reasonably related" to the allegations in the complaint that was filed with the EEOC, it could not hear the retaliation claim under 29 U.S.C. Sec. 626(d).[3] See Almendral v. New York State Office of Mental Health, 743 F.2d 963, 967 (2d Cir.1984).
 
 
 30
 It is undisputed that this claim of retaliation arises out of incidents subsequent to the filing of the EEOC complaint. Our prior rulings make clear, however, that her retaliation claim must nonetheless be considered "reasonably related" to the complaint she filed with the EEOC.
 
 
 31
 We have previously held that when an employee brings a claim alleging retaliation for filing a complaint with the EEOC, the retaliation claim is deemed "reasonably related" to the original EEOC filing. In such a case, the allegations of retaliation are seen as stemming from the earlier discriminatory incident, including plaintiff's attempt to vindicate her federal rights against discrimination. The retaliation claim may thus be heard notwithstanding plaintiff's failure to state it in a separate complaint filed with the EEOC.
 
 
 32
 In Goodman v. Heublein, Inc., 645 F.2d 127 (2d Cir.1981), we held that plaintiff's claim that he was transferred out of the country in retaliation for his EEOC complaint alleging age discrimination in the failure to promote him was "reasonably related" to the complaint. See also Kirkland v. Buffalo Board of Education, 622 F.2d 1066 (2d Cir.1980) (per curiam ).
 
 
 33
 We note that Halpert v. Wertheim & Co., Inc., 81 F.R.D. 734 (S.D.N.Y.1979), on which the district court relied, was decided prior to our adoption of the "reasonable relationship" test in Kirkland, supra. Miller v. International Tel. & Tel. Co., 755 F.2d 20 (2d Cir.), cert. denied, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985), also relied upon by the district court, is inapposite. Miller holds only that a failure to rehire claim is not "reasonably related" to a claim based on an earlier dismissal. Miller in no way alters the rule set forth in Goodman and Kirkland that a claim alleging retaliation for an employee's filing of charges with the EEOC is reasonably related to that complaint.
 
 
 34
 Owens alleges that the Housing Authority retaliated against her for filing with the EEOC by refusing to plea bargain her disciplinary charges. Since her claim is reasonably related to her EEOC filing, the district court should have found subject matter jurisdiction over the retaliation claim.
 
 
 35
 On appeal, the Housing Authority does not press the argument that the claim is not reasonably related to the EEOC complaint; rather, it argues that a failure to plea bargain does not constitute an "adverse employment action," within the meaning of the ADEA. See, e.g., Grant v. Bethlehem Steel, 622 F.2d 43, 46 (2d Cir.1989) (Title VII) ("an employment action or actions disadvantaging persons engaged in protected activities"). Whether this is so, however, should be decided in the first instance by the district court, upon an appropriate motion following remand.
 
 
 36
 In sum, Owens is not precluded by the state court ruling on misconduct from proving her qualification for her job on her ADEA claim, and the district court should have exercised subject matter jurisdiction over Owens' claim of retaliation. We therefore vacate the district court's grant of summary judgment, dismiss the cross appeal, and remand for further proceedings not inconsistent herewith.
 
 
 
 *
 Hon. Leonard D. Wexler, United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 ADEA provides:
 It shall be unlawful for an employer to discriminate against any of his employees ... because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or ... made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or litigation under this chapter.
 29 U.S.C. Sec. 623(d). Title VII provides:
 It shall be an unlawful empoyment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
 42 U.S.C. Sec. 2000e-3(a).
 
 
 [2]
 The fact that one of the fourteen disciplinary charges concerned "incompetence" does not change our conclusion. The finding of incompetence was clearly not necessary to the trial officer's conclusion that discharge was an appropriate sanction. The finding is thus without preclusive effect. Moreover, the Article 78 court did not mention that charge. Rather, it upheld the discharge as justified by "gross insubordination."
 
 
 [3]
 The Housing Authority does not contend that Owens needed to file a separate complaint with the EEOC covering her contention that the Housing Authority pressed disciplinary charges resulting in discharge in retaliation for her in-house complaints about her supervisors. The argument is based on essentially the same factual allegations presented in the age discrimination complaint that was filed with the EEOC. It simply offers a different theory for the adverse personnel action. The complaint Owens filed with the EEOC gave the New York City Housing Authority adequate notice of her allegations and opportunity for conciliation. Cf. Snell v. Suffolk Cty., 782 F.2d 1094, 1101 (2d Cir.1986); Almendral v. New York State Office of Mental Health, 743 F.2d 963, 967 (2d Cir.1984)