**Gregory A. FRASER, Plaintiff,**

v.

**The STATE OF NEW YORK, SUNY AT STONY BROOK, Defendant.**

**No. CV 90–4457.**

United States District Court, E.D. New York.

Aug. 7, 1991.

Gregory A. Fraser, pro se.

Robert Abrams, New York State Atty. Gen., Martha L. Luft, Hauppauge, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In the above-referenced action, plaintiff Gregory Fraser ("plaintiff"), sues for an alleged discriminatory constructive discharge and failure to rehire, pursuant to 42 U.S.C. § 2000e–2. Plaintiff appears pro se. Named as defendant is the New York State University at Stony Brook ("defendant" or "the University"). Currently, defendant moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Court having received numerous affidavits and submissions from plaintiff which go beyond the scope of the pleadings, defendant's motion will be treated as one for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is granted in part and denied in part.

## BACKGROUND

On October 4, 1989, plaintiff was hired by defendant for an entry-level position as a principal architecture drafting technician at the Stony Brook University Hospital. On October 12, 1989, he commenced work. On December 21, 1989, after approximately two months at the job, plaintiff submitted a handwritten resignation. His decision to resign was prompted by his dissatisfaction with the work environment, and with an apparent clash with the allegedly "misdirected policies" of his supervisor.[1]

For several weeks prior to and for nearly three months after his resignation, plaintiff applied for seven positions with the defendant. The positions included: financial analyst intern, programmer analyst, senior medical practice administrator, senior programmer analyst, senior research support specialist, research assistant and associate facilities program coordinator. In each instance, plaintiff's search was unsuccessful.

On March 30, 1990, plaintiff filed a discrimination charge with the Equal Employ-

---

1. More specifically, Fraser cited "her non-cooperation and constant insistence of my so-called lateness" as having a detrimental effect on his performance. *See* Defendant's Reply Aff. at exhibit A.

ment Opportunity Commission ("EEOC") which alleged "[b]etween December 6, 1989 and March 10, 1990, I was denied hire for seven management positions for which I am qualified because of my race/black in violation of Title VII of the Civil Rights Act of 1964 as amended." The EEOC elected not to commence suit and on December 10, 1990 granted plaintiff the right-to-sue-letter he had requested. *See* 42 U.S.C. § 2000e–5(f)(1). On December 17, 1990, plaintiff commenced this action.

In count one of the complaint, plaintiff alleges that he was "constructively discharged" by virtue of his supervisor's actions, which he claims were racially motivated. He claims he was discriminated against in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e *et seq.*, New York Executive Law § 296 and New York Civil Rights Law § 46. In count two, plaintiff alleges he was denied employment on the basis of his race in violation of these same statutes and Federal Executive Order 11246. Plaintiff sought: (1) appointment of counsel pursuant to 42 U.S.C. § 2000e–5(f)(1)[2] and (2) injunctive relief, damages, costs and attorneys' fees. As noted above, the Court treats defendant's motion to dismiss as one for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## DISCUSSION

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The burden rests on the moving party to clearly establish the absence of a genuine issue as to any material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90

S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and "a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Donahue*, 834 F.2d at 57. Since the presence of only a genuine and material issue of fact precludes the entry of summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the summary judgment procedure allows a court to determine whether a trial is necessary. Further, on a motion for summary judgment, a court must be mindful that its role is not to try issues of fact, but to determine whether there are issues to be tried. *Donahue*, 834 F.2d at 58.

### First Count

The plaintiff alleges in count one of the complaint that he was constructively discharged by defendant on the basis of his race in violation of his civil rights[3] and 42 U.S.C. § 2000e *et seq.* In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and again in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court set forth the framework by which claims of discrimination involving Title VII must be adjudicated:

> First the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

2. In a separate decision, dated March 22, 1991, this Court denied plaintiff's request for court appointed counsel.

3. The applicable statute, 42 U.S.C. § 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every

State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...."

*Id.* at 252–253, 101 S.Ct. at 1093 (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.) The failure of either party to meet its burden at any step of the analysis is dispositive of the action. *Meschino v. ITT Corp.*, 563 F.Supp. 1066, 1069 (S.D.N.Y.1983). To establish a prima facie case of racial discrimination, the plaintiff must present evidence that: 1) he is in a protected racial group; 2) he was qualified for the job; 3) he was discharged; and 4) the discharge occurred under circumstances giving rise to an inference of discrimination. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2nd Cir.1987) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824) (further citations omitted).

█ In the case at bar, the record shows that plaintiff is a Black male of Hispanic origin, thus satisfying the first requirement. Similarly, plaintiff's qualifications as a principal architecture drafting technician are uncontested, therefore it appears that the second requirement—qualification—is likewise met. Since he submitted a handwritten resignation, plaintiff's first claim hinges on the allegation that his resignation was actually a constructive discharge. If constructive discharge is established, plaintiff's resignation, for the purpose of establishing a prima facie case, would be viewed "as if the employer had actually discharged the employee." *Lopez*, 831 F.2d at 1188 (citation omitted). However, to support a claim for constructive discharge, the evidence must show that the employer " 'deliberately [made] an employee's working conditions so intolerable that the employee [was] forced into an involuntary resignation.' " *Id.* (citations omitted).

█ In the case at bar, the record does not contain a scintilla of evidence supporting plaintiff's theory of constructive discharge. Plaintiff submitted his own affidavit in support of his claim contending that he was the subject of "misdirected policies" and that defendant did not provide him with an agreeable work environment. However, there was no evidence submitted, beyond these conclusory statements, to support the allegation of an intolerable work environment. Specifically, there is no evidence that plaintiff was ever subjected to racial epithets, hostile language, excessive criticism in day to day operations or performance reviews, or the threat of termination or other offensive conduct. In light of this, the Court is guided by the Second Circuit's holding in *Meiri v. Dacon*, 759 F.2d 989 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985), which held that:

> To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases. Given the ease with which these suits may be brought and the energy and expense required to defend such actions, we believe the trial judge properly granted summary judgment.

*Id.* at 998.

Since the evidence is insufficient to satisfy the third prong, *Lopez*, 831 F.2d at 1188, and any failure is dispositive, *Meschino*, 563 F.Supp. at 1069, this Court need not reach the issue of an inference of discrimination. Accordingly, this Court finds that the evidence presented is insufficient to establish a prima facie case of discrimination, with respect to count one, as a matter of law.

### Second Count

In count two, plaintiff alleges that defendant's decision not to rehire him for any of the seven positions for which he applied was the result of discrimination on the basis of race, in violation of plaintiff's civil rights and Title VII, *see* 42 U.S.C. § 1981; 42 U.S.C. § 2000e *et seq.* In support of his allegations, plaintiff submits the following: the job postings, his transcript and resume, defendant's hiring statistics, and plaintiff's own affidavit claiming that he was subsequently hired in a comparable position by another employer. In response, defendant asserts, *inter alia*, that plaintiff had not even completed the probationary period of his original position, apparently precluding consideration of plaintiff for other positions.

Similar to the first count, the standard for assessing this claim is derived from *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. To establish a prima facie case of racial discrimination, plaintiff must present evidence that: "(1) he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.*

Applying these standards to the case at bar, it is uncontested that plaintiff can satisfy the first and fourth prongs of the test; to wit, plaintiff is Black, he applied for seven positions with defendant, and the positions remained open and were eventually filled by White candidates. However, the evidence submitted to prove the second and third prongs, i.e., that plaintiff was qualified for the positions, is dubious at best and insufficient in some instances. Plaintiff submitted his resume and transcript, a copy of the job postings, and his own conclusory affidavit that he must be qualified because he was subsequently employed in a comparable position in the private sector. In opposition, defendant offers an affidavit from defendant's recruitment manager which reflects that plaintiff was not qualified for any of the positions for which he applied. Moreover, it is uncontested that all of the positions for which plaintiff applied were outside the field of discipline in which plaintiff was employed.

Notwithstanding the paucity of the evidence, this Court does not conclude that plaintiff has failed to establish a prima facie case. As the Second Circuit pointed out in *Patrick v. LeFevre*, 745 F.2d 153, 160 (1984), the fact that plaintiff is pro se "is yet another fact militating against the granting of summary judgment. This Court has long evinced a sensitivity toward the plight of the uncounselled [plaintiff] attempting to navigate the technically-laden road to the courthouse." *Id.* (citations omitted).

Cognizant that "the burden of establishing a prima facie case is not an onerous one," *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094, this Court is likewise bound by the holding in *Owens v. New York City Housing Authority*, 934 F.2d 405, 409 (2d Cir. 1991). In *Owens*, the court concluded that "*McDonnell Douglas* requires only a minimal showing of qualification to establish a *prima facie* claim. [Plaintiff] only needs to demonstrate that [he] 'possesses the basic skills necessary for performance of [the] job.'" *Id.* (further citations omitted).

■ Considering the evidence of plaintiff's background and educational training in light of the qualifications set forth in the job postings, it is readily apparent that the plaintiff is not qualified for six of the seven positions for which he applied. Specifically, most of the positions, including those of programmer analyst, senior medical practice administrator, senior research support specialist, research assistant and associate facilities program coordinator, required specific educational degrees which plaintiff, the recipient of dual Bachelors Degree of Architecture and a Bachelor of Science in Management, did not possess.[4] The sixth position, senior programmer analyst, required minimum qualifications of at least one year of experience as an IBM mainframe systems programmer which plaintiff did not satisfy. Only with regard to the financial analyst intern position is there a material question as to whether plaintiff is qualified. Accordingly, this Court cannot conclude that plaintiff has failed to allege a prima facie case.

■ As set forth above, the burden shifts to the defendant in the second phase of a discrimination analysis "to articulate some legitimate, non-discriminatory reason

---

**4.** According to the job postings submitted, the minimum qualifications for the listed positions required, respectively: Bachelor of Science in Computing Science or related field; Masters or 3–5 years business experience preferred; Bachelors degree in Biostatistics or similar quantitative field; B.S. in either Biochemistry, Molecular Biology, Biology or related field; and Bachelors degree in Engineering plus five years of direct supervisory experience in rehab and new construction.

for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. As the Supreme Court stated in *Burdine,* "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." 450 U.S. at 257, 101 S.Ct. at 1096; *see also, Knight v. Nassau County Civil Serv. Comm'n,* 649 F.2d 157, 161 (2d Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 87 (1981). Furthermore, as the Second Circuit noted in *Meiri,* "the inference of discrimination is far more powerful in employee discharge cases than it is in the context of failures to hire or to promote." 759 F.2d at 997.

█ In this case, defendant puts forth the evidence that plaintiff resigned his original position after only two months, which was well before the conclusion of the probationary period. Plaintiff, on the other hand, would have this Court overlook the fact that he resigned prior to the completion of his probationary period. Specifically, plaintiff argues: "All of the applications ... *did not* require that the job applicant work in his then current position ... prior to being hired to any of the advanced managerial positions.... [H]iring for these positions is not a function of length of service with the State, but rather a function of educational and work experience *in the field of discipline.*" Within the bounds of this case, the Court does not agree. It would be utterly without reason to expect employers making hiring decisions to ignore clearly relevant factors such as prior job history. As the Supreme Court stated in *Burdine:*

> The statute was not intended to "diminish traditional management prerogatives." [citing *Steelworkers v. Weber,* 443 U.S. 193, 207, 99 S.Ct. 2721, 2729, 61 L.Ed.2d 480 (1979) ]. It does not require the employer to restructure his employment practices to maximize the number of minorities and women hired ... Rather, the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria.

450 U.S. at 259, 101 S.Ct. at 1096–1097 (citation omitted). The fact that plaintiff resigned after a mere ten weeks, absent a finding of constructive discharge, is clearly a non-discriminatory indicator of his inability to operate in defendant's work environment. As a result, in light of all the circumstances, this Court holds that this explanation of the motivation behind the employment decision is sufficient to meet defendant's burden. However, the analysis does not end there.

At this stage, the Court must review the evidence to evaluate whether the reasons offered by defendant could be a pretext for racial discrimination. As the Second Circuit stated recently in *Taggart v. Time, Inc.,* 924 F.2d 43, 46 (1991), "[t]he inference of discrimination may be shown by direct evidence, statistical evidence, or circumstantial evidence ... all of which is aimed at persuading the trier of fact directly that the more likely reason for plaintiff not being hired was because of his [race] and that the employer's proffered reason was pretextual and not worthy of belief." *Id.* (citations omitted).

█ In the case at bar, plaintiff sets forth statistics showing a wide disparity in racial hirings at the managerial level by the University, which he alleges "supports his contention of historical employment discrimination which affected plaintiff's own applications for managerial employment." Notwithstanding that the University casts serious doubt about the accuracy of the statistics, defendant chose not to adduce countervailing evidence. *See Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 996, 108 S.Ct. 2777, 2789, 101 L.Ed.2d 827 (1987).

Although this Court is cautioned by the Supreme Court's observation that "such general determinations, while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to rehire," *McDonnell Douglas,* 411 U.S. at 805 n. 19, 93 S.Ct. at 1826 n. 19 (citations omitted), the credibility of the statistics is an issue for the jury to determine. Accordingly,

there is sufficient evidence, under the circumstances, to withstand a motion for summary judgment on this count.

### CONCLUSION

For the reasons stated above, this Court finds that plaintiff is unable to prove a prima facie case of constructive discharge. With regard to the allegation of racially motivated failure to rehire, the plaintiff has put forth sufficient evidence with respect to the financial analyst intern position to overcome defendant's motion for summary judgment. Accordingly, defendant's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, is hereby granted as to count one and denied as to count two. Furthermore, in his complaint, plaintiff alleges violations of New York Executive Law § 296 and New York Civil Rights Law § 46. In evaluating whether to hear these state claims, this Court holds that considerations of judicial economy, comity and fairness to litigants compel a dismissal of the state claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, those claims are hereby dismissed.

SO ORDERED.