**Nicholas J. MARLOW, Plaintiff,**

v.

**OFFICE OF COURT ADMINISTRATION OF the STATE OF NEW YORK, Defendant.**

**No. 91 Civ. 6079 (RWS).**

United States District Court, S.D. New York.

April 20, 1993.

Nicholas J. Marlow, pro se.

Robert Abrams, Atty. Gen., of the State of N.Y., New York City, for defendant; by Charles F. Sanders, Asst. Atty. Gen.

## OPINION

SWEET, District Judge.

The Office of Court Administration of the State of New York ("OCA") has moved for summary judgment against the complaint of *pro se* plaintiff Nicholas J. Marlow ("Marlow"), who has alleged that OCA refused to hire him because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). For the following reasons, the motion is granted.

### Prior Proceedings

Marlow filed an administrative discrimination complaint with the U.S. Equal Employment Opportunity Commissioner ("EEOC"), dated March 4, 1991, alleging that he was being discriminated against on the basis of his age; he gave his age in the administrative complaint as fifty-six. On August 9, 1991, the EEOC determined that he was not selected for reasons other than his age, and dismissed the complaint. Marlow subsequently filed this lawsuit in September, 1991, and OCA moved to dismiss on September 3, 1992. The motion was heard on November 4, 1992, and considered fully submitted as of that time.

### The Facts

OCA is an agency created under the New York Judiciary Law to administer New York Courts, including the classifying and hiring of clerks and other administrative jobs. Its hiring practices are governed by the New York Judiciary Law and rules of the courts and agencies of New York's Unified Court System, which are published in the State Register and made available in New York State's Official Compilation of Codes, Rules and Regulations (NYCRR). Title 22 of the NYCRR contains the rules and regulations pertaining to the administration of the Unified Court System.

The Chief Administrator, who supervises New York's court system pursuant to Article 6, § 28 of the New York State Constitution and § 212 of the Judiciary Law, classifies all

positions under his control in the Unified Court System into four classes: competitive, noncompetitive, labor, and exempt. The competitive class includes "all positions for which the Chief Administrator find it is practicable to determine the merit and fitness of applicants by competitive examination." 22 NYCRR § 25.11. Applications and examinations for this class are governed by the rules and regulations set out in 22 NYCRR § 25.13 *et seq.* After applicants qualify as candidates on the examination, they are selected for interviews by the staff of each court agency (the "court agencies") who make the actual decision to hire. An agency is allowed to choose among three available candidates who have the three highest scores on the exam pursuant to 22 NYCRR § 25.20(a)(1), the "One in Three Rule". The interview enables the agency to choose which of the three candidates it wishes to hire.

Marlow applied for the position of Court Assistant, a position in which its occupant performs clerical tasks related to court proceedings of the Supreme Court, all County and District level courts, certain City Courts, and the Civil Court of the City of New York, and other duties. The position has been classified as "competitive" by the Chief Administrator; it was graded at Judicial Grade 16 and paid an annual salary of approximately $27,000 at the times when Marlow was interviewed. Qualifications for it include a certain degree of education or a certain number of years of clerical experience and a passing score on the examination given for the position. Marlow, who received a bachelor's degree in economics from the City College of New York in 1952 and a Master's degree in English from Brooklyn College in 1955, more than adequately meets the educational qualifications.

Marlow took the written examination for the position of Court Assistant on September 6, 1986, at which time his age was fifty-one, and was tested for his reading comprehension and his ability to check if a form has been correctly filled in, to classify items, and to file alphabetically. Marlow received a score of 87 (which included 5.0 veterans' credit) on the multiple-choice examination and was ranked at 741 out of 9,065 listed as eligible in the state (the "eligible list"). On October 19, 1987, he was put on the state-wide list of successful candidates sent to the appropriate officials of the New York County Supreme Court, the Civil Court of the City of New York, the New York Criminal Court, and the New York Family Court to canvass the list to interview for vacant Court Assistant positions.

Marlow was interviewed at least 15 times between May of 1989 and February of 1991, including six interviews at the Family Court and six interviews at the Civil Court. He was consistently rejected after being interviewed on the grounds of his hostile and belligerent demeanor during the interviews, his inappropriate dress of dirty, casual clothes, and comments which his interviewers interpreted as racist. Marlow's only employment during the last 20 years ended when he was terminated from it within a year, and during the interviews with the court agencies he refused to respond to questions concerning gaps in his employment history. It was concluded that he was not qualified to deal with the public or with his coworkers in the culturally diverse court system in New York City.

Believing that candidates with written scores that ranked them below him on the eligible list were being chosen for these jobs, he first wrote to the OCA Personnel Department to complain on October 2, 1989, and finally to Governor Mario Cuomo by letter dated September 18, 1990. As result of these inquiries he confirmed his belief. However, nine candidates over the age of forty were hired by OCA from the eligible list.

### Discussion

The standards for summary judgment under Rule 56, F.R.Civ.P., are well-known. The court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is warranted only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. However, the mere existence of

factual issues, if those issues are not material to the claims before the court, cannot suffice to defeat a motion for summary judgment. *Knight v. U.S. Fire Insur. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Although discrimination cases typically involve a plaintiff's allegation of the defendants' discriminatory intent, that alone does not immunize the case from summary judgment if the allegations are conclusory and the defendants' motion is supported by an evidentiary record. "The salutary purposes of summary judgment ... apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985).

### Marlow's Prima Facie Case Under the ADEA

█ To support his claim of discrimination, Marlow must establish factual issues sufficient to make out a *prima facie* case of a violation of the ADEA. The ADEA provides that "It shall be unlawful for an employer ... to fail or refuse to hire ... any individual ... because of such individual's age." 29 U.S.C. § 623 (1988). The standards for the burden and order of proof in ADEA cases are the same as those in cases of discrimination arising under Title VII, *see Bovers v. Flying Tiger Line, Inc.*, 979 F.2d 291, 296 (2d Cir.1992); *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991); *Taggart v. Time, Inc.*, 924 F.2d 43, 45–46 (2d Cir.1991). The standards are well known, and were set out by the Supreme Court in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), *quoting McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination; if he succeeds, the burden of proof then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Should the defendant carry this burden, the plaintiff must then "be afforded a fair opportunity to show that the [defendant's] stated reason for [plaintiff's] rejection was in fact pretext." *Id.* at 804, 93 S.Ct. at 1825. The burden of persuasion at all times remains with the plaintiff. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *Zahorik v. Cornell Univ.*, 729 F.2d 85, 92 (2d Cir.1984).

█ The plaintiff's initial burden requires him to offer evidence "adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act," *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914, 919 (2d Cir. 1981), *quoting, International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). To make out his *prima facie* case, Marlow must show (1) that he was in the protected age group, (2) that he was qualified for it, (3) that he was not appointed to the position of Court Assistant, and (4) that someone outside the protected age group was appointed. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *Levin v. Analysis & Technology, Inc.*, 960 F.2d 314, 316 (2d Cir. 1992). The burden then shifts to the employer to show some legitimate, nondiscriminatory reason for the employee's rejection, and that age was not the fact which resulted in the employer's decision not to hire. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Taggart v. Time*, 924 F.2d 43, 46 (2d Cir. 1991). If the defendant succeeds, the presumption raised by the *prima facie* case is rebutted and the factual inquiry proceeds to a new level of specificity. *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094.

█ Marlow has not managed to establish the second element listed here necessary to make his *prima facie* case: that he was qualified for the position. He maintains that he was determined to be completely qualified as a matter of law because he was never given a notice of disqualification pursuant to 22 NYCRR § 25.13(d). However, the disqualification provision in § 25.13(d) refers

only to candidates who are taken off the eligible list and cannot be called in for interviews, which did not happen to Marlow.

He also maintains he was qualified as matter of law based on his level of education and his test score. That is not the case; if it were, there would be no need for OCA to compile an eligible list, or to schedule interviews from the list. Candidates are chosen as Court Assistants based on all three factors—their scores, their educational background, and their interviews with the respected court agencies. The interview serves to test skills other those tested in the written exam, but which are nonetheless required for the job:

> At the interview, the interviewers ... make inquires of the candidate to assess the interpersonal and oral communication skills as related to his or her experience dealing with the public which is not covered by a written examination....

Rivera Aff. at 4. The "Title Standard" description of the position lists as required the "ability to interview and orally exchange information with the public" and "ability to exercise tact and patience when speaking with or interviewing upset and angry individuals." Sanders Aff., Exh. M.

Marlow has made no showing that he was qualified apart from his test scores. Although *McDonnell Douglas* requires "only a minimal showing of qualification to establish a *prima facie* claim," and that the plaintiff "only needs to demonstrate that [he] possess the basic skills necessary for performance of [the] job," *Owens v. New York City Housing Authority*, 934 F.2d 405, 409 (2d Cir.1991), *quoting Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978)), Marlow has supplied no facts indicating that he has requisite qualifications for the job beyond his education and his score. He has put before this Court no evidence of having successfully dealt with the public in prior jobs. This alone distinguishes Marlow's case from the facts in *Taggart*, where the applicant was consistently rejected as being "overqualified." *Taggart*, 924 F.2d at 47. The essence of Marlow's argument is that candidates with lower written scores were hired as Court

Assistants, but this does not explain how he qualifies for a job that involves dealing with the public.

Marlow has made a showing, although not a clear one, on the fourth consideration—that applicants outside the protected group were hired in his stead. At least nine other Court Assistant appointees over the age of 40 were appointed off the same eligible list, and certain OCA employees who participated in the decision to appoint the plaintiff—notably Carl Brown in the Criminal Court, and William Etheridge in the Civil Court—were themselves over 40. *See Toliver v. Community Action*, 613 F.Supp. 1070, 1074 (S.D.N.Y.1985), *aff'd*, 800 F.2d 1128 (2d Cir.), *cert. denied*, 479 U.S. 863, 107 S.Ct. 217, 93 L.Ed.2d 146 (1986) (if decisionmaker is in same protected class as plaintiff, claims of discrimination become less plausible).

### OCA Has Articulated Legitimate, Nondiscriminatory Reasons for Not Hiring Marlow

■ Assuming that Marlow could establish a *prima facie* case, however, OCA has articulated legitimate nondiscriminatory reasons for not appointing him. His interviewers reported him "unresponsive to inquiries about and inability to explain his extended periods of unemployment (1969–79; 1980–date)" and described his "intolerant, sarcastic, condescending, argumentative, disrespectful, and verbally combative nature at the interviews." Bullock Aff. at 6. One African–American interviewer noted that:

> at the September 6, 1989 interview, Mr. Marlow made a complaint about "you people" to myself and Ms. Joyce Grant, both Black females and co-interviewers,

although when pressed to explain what he meant by this phrase, Marlow stated he meant people who should hire him. Bullock Aff. at 6–7. Another interviewer reported that Marlow "made non-complementary remarks about OCA employees who did not speak English properly, 'non-English speaking employees' and individuals who did not seem as intelligent as the applicant." Rivera Aff. at 5.

Marlow's poor employment history and belligerent attitude during his interviews provide ample reasons for OCA's refusal to select him for the position of Court Assistant. Marlow has not made a factual challenge to the justifications offered by the OCA as their legitimate, nondiscriminatory reasons for not hiring him; in response to OCA's arguments about his interviews, he simply asserts that he had a right to complain during later interviews about not being hired in earlier ones. Under these circumstances, OCA's justification is sufficient in itself, and fails to support an inference that it intentionally discriminated. *Cf. Ramseur v. Chase Manhattan, Inc.*, 865 F.2d 460, 464 (2d Cir.1989) (previous eight years of laudatory reviews justified inference that firing was due to racial discrimination); *Kirschner v. Office of the Comptroller of New York*, 973 F.2d 88, 94 (2d Cir.1992) (plaintiffs' allegations of equivalent experience, conflicting ratings, and prior discriminatory action does not permit dismissal on summary judgment for lack of qualifications). Marlow has not set forth any facts which could serve to rebut OCA's justification.

### Marlow Has Failed to Show the Reasons Are Pretext

Once a defendant in an ADEA claim has set out an adequate justification for not hiring a plaintiff, it becomes the plaintiff's task to prove such a justification is only a pretext, a smokescreen designed to hide the discriminatory reason for not hiring or for firing the plaintiff. A plaintiff need not show that age was the only factor in the defendants' decision not to hire him, but that his age was a determinative factor, *Levin v. Analysis & Technology, Inc.*, 960 F.2d 314, 317 (2d Cir.1992); *Montana v. First Fed. S. & L. Ass'n of Rochester*, 869 F.2d 100, 105 (2d Cir.1989). Discriminatory animus must be a motivating factor in the adverse employment decision, i.e. that absent consideration of his age he would have been hired. *See McDonald v. Santa Fe Transportation Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976). A plaintiff can show pretext in two ways, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

Marlow has not put before the court any facts which indicate that a discriminatory reason motivated OCA. OCA has put before the court evidence that, of the 38 appointees whose date of birth is known to OCA, nine (or 23%) were over the age of 40, and three were over the age of 50. Although OCA admits it has no statistics available on the relative ages of those who took and passed the 1986 exam which Marlow took, it did collect information from self-reporting EEO data collection forms for applicants who took and passed the latest Court Assistance examination held in 1990. These statistics revealed that 20.2% of the 1990 passing candidates were over the age of 40 at the time of the exam. Ferrara Aff. at 7; Sanders Aff. at 10.

Marlow has also failed to show that OCA's explanation of his poor performance at job interviews is unworthy of belief. Although he contests the OCA's characterization of his performance during the interviews, he has admitted to using later interviews as forum to complain about not been chosen at earlier ones, and his interviews seemed to focus on why lower-scoring individuals were chosen instead of him instead of on how he would be appropriate for the job. However, even assuming that his manner during the interviews was not as disrespectful as his interviewers perceived it to be, this does not rise to the level of showing that OCA's explanation is merely pretext. The ADEA does not require that the candidate whom a court considered most qualified for a particular position be awarded that position; it requires only that the decision among candidates not be discriminatory. To prevail in his ADEA action, Marlow cannot rely on the fact that all of his interviewers may have been mistaken in their belief that he would not deal well with the public.

In short, Marlow has failed to put before this court any facts from which a jury could infer OCA's justification was pretextual and not authentic. No inference of discriminato-

ry animus or practice was alleged in view of OCA's evidence that it hired nine Court Assistants over the age of 40 during the relevant time period. Under these circumstances, Marlow's age was a neutral factor. *Cf. Parcinksi v. Outlet Company,* 673 F.2d 34, 37 (2d Cir.1982). Marlow has raised no factual issue as to whether age was a determinative factor in the decision not to hire him, and he has not put forth any factual evidence adequate to rebut OCA's justifications for not hiring him.

### Marlow's State Law Claims

■ Once a candidate has passed the written examination, met the educational requirement, and been interviewed, his appointment is made "by the selection of one of the three persons certified by the Chief Administrator of the Courts as standing highest on such eligible list," 22 NYCRR § 25.20(a)(1). This is known as the "one in three" rule, and Section 25.20 under the Court Rules and Regulations parallels the provision in New York's civil service law, N.Y.Civ.Serv.L. § 61. The statute here officially grants a court agency the right to select one of the three highest ranking candidates on an eligible list. In making appointments from an eligible list, therefore, the court agencies could properly consider factors other than a candidate's ranking on a list, such as personality, character and disposition. *Cassidy v. Muni. Civ. Serv. Comm. of New Rochelle,* 37 N.Y.2d 526, 528–30, 375 N.Y.S.2d 300, 337 N.E.2d 752 (1975) (upholding constitutionality of one-in-three rule). As a result, the appointing authorities here were not required to select Marlow even if he were the person graded highest on the list. They did not; and since Marlow had no presumptive right to be appointed based solely on his ranking under the one in three rule, his claim must fail. *See Kaminsky v. Leary,* 33 A.D.2d 552, 552–3, 304 N.Y.S.2d 650 (1st Dep't), *affirmed,* 28 N.Y.2d 959, 323 N.Y.S.2d 700, 272 N.E.2d 75 (1971). In fact, the discretion granted to the appointing authority under the one in three rule is so integral to the process that a state agency cannot be compelled to make an appointment from a certified eligibility list if the list contains less than three eligible can-

didates. *Heslin v. City of Cohoes,* 74 A.D.2d 393, 428 N.Y.S.2d 334 (3d Dep't 1980).

### Right to Sue Letter

OCA maintains that, because it is a state agency, Marlow's right to sue letter must be issued from the United States Department of Justice (DOJ), not the EEOC as it is here, and that until he has such a letter he has not exhausted his administrative remedied and may not commence this action in federal court.

■ Neither of the two cases cited by OCA (*Snell v. Suffolk County,* 782 F.2d 1094 (2d Cir.1986); *Sweeney v. Research Foundation of the State Univ. of N.Y.,* 711 F.2d 1179 (2d Cir.1983)) state that the plaintiff must have received the right to sue letter from the DOJ. In *Owens v. N.Y. Housing Auth.,* 934 F.2d 405, 407 (2d Cir.1991), however, a plaintiff brought suit against the New York City Housing Authority after receiving a right-to-sue letter from the EEOC. None of the three cases cited by the parties turn on whether or not the right-to-sue letter was issued by either the DOJ or by the EEOC, and claims of age discrimination against municipal authorities have been dismissed based on a failure to file a claim solely with the EEOC pursuant to 29 U.S.C. § 626(d). *See Reale v. Jenkins,* slip. op., 92 Civ. 7234, 1993 WL 37091 (1993 U.S.Dist.Lexis 1348) (S.D.N.Y. Feb. 9, 1993). Marlow has not alleged a violation of New York's Human Rights Law, *see* N.Y.Exec.L. § 296 (McKinney 1982), and therefore cannot be held accountable for not having complied with its separate procedural requirements.

Based on the foregoing discussion, however, this Court does not need to reach the issue of whether or not Marlow has exhausted his administrative remedies.

### Conclusion

For the reasons given above, defendant's motion for summary judgment is granted.

It is so ordered.